**Maria CARRANZA and Margaret Espinoza on Behalf of themselves and all others similarly situated; Kent Winterrowd, plan office administrator of the Juan de la Cruz Farmworkers Pension Plan, Plaintiffs,**

v.

**TEX–CAL LAND MANAGEMENT CORPORATION, INC., a California corporation, Defendant.**

**No. CV 83–5876–AAH–(MCx).**

United States District Court, C.D. California.

Oct. 15, 1985.

---

Ellsworth, Corbett, Seitman & McLeod by George C. Lazar, San Diego, Cal., and Frank N. Denison, Leucadia, Cal., for plaintiffs.

Werdell, Chapin & Leverett by Gerald M. Leverett, Bakersfield, Cal., for defendant.

---

from the agreed upon articles. Tex-Cal's attorney and its owner, Steele, questioned the union about Article 17. After a short discussion, Tex-Cal said it could not agree to any contract that contained Article 17.

On August 5, Tex-Cal notified the union that the extension of the agreement was terminated. Tex-Cal communicated that it would not sign the negotiated contract and that no contract currently existed. On September 8 and 9 the parties met again to discuss Article 17, but were unable to resolve their dispute. The parties did not meet again until discussions were held on a collective bargaining agreement that was subsequently signed and went into effect on June 11, 1981.

Between August 5, 1980, and June 11, 1981, Tex-Cal did not make any contribution to the pension fund on behalf of union members it employed. Plaintiffs have sued for those contributions. The parties have stipulated that during this period covered class members worked 379,613 hours and that, if the Court holds that pension contributions are owed, $37,961.30 will be due the union. This calculation is based on Article 31 of the expired contract and the negotiated Article 31 of the new contract.

OTHER PROCEEDINGS

After the parties failed to reach agreement, the union filed an unfair labor practice charge before the state Agricultural Labor Relations Board. The union contended that under the California Labor Code §§ 1153(c) and 1155.2(a) Tex-Cal acted in bad faith when it refused to sign the agreement on August 1.

The ALRB found Tex-Cal acted in bad faith because it initialed Article 17 and then refused to agree to put the Article into the agreement. Labor Code § 1155.2(a) provides that good faith bargaining includes "... the execution of a written contract incorporating any agreement reached if requested by either party...."

The ALRB's decision was set aside by the California Court of Appeals in *Tex-Cal v. ALRB*, 135 Cal.App.3d 906, 185 Cal.Rptr. 588 (5th Dist., 1982). The appellate court said that although both parties had initialed Article 17, there had been no meeting of the minds with respect to that article. Therefore, the court held, there had been no bad faith under the Labor Code. The court remanded the case for further administrative fact finding on the question of whether the company in good faith pursued negotiations after the August 5 meeting. *Id.* at 918–920, 185 Cal.Rptr. 588. According to defendant's trial brief, that case is currently before the ALRB.

LAW

■ Expiration of the collective bargaining agreement does not, by itself, relieve the employer from making trust fund payments. *Peerless Roofing Co. v. NLRB*, 641 F.2d 734, 736 (9th Cir.1981). Upon expiration of the agreement, an employer must maintain the status quo and is not free to unilaterally change established terms and conditions of employment that constitute mandatory subjects of bargaining. This rule ensures that the union will have an opportunity to bargain over pension fund contributions after the agreement expires. *Id.* The prohibition against unilateral changes is in effect until the parties negotiate a new agreement or bargain in good faith to an impasse. *American Distributing Co. v. NLRB*, 715 F.2d 446, 449 (9th Cir.1983); *Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Trust Fund*, 654 F.2d 625, 627 (9th Cir.1981).

The parties here agree with the law as stated above. They disagree, however, in the effect that a bargaining impasse has on the employer's obligation to make trust fund payments. Defendant contends that upon impasse it is relieved of its duty to maintain the status quo and can therefore make changes as it wishes. Plaintiffs argue that even if there was an impasse, defendant is not relieved from its obligation to make trust fund contributions. They contend that upon an impasse the employer can only make unilateral changes that are not substantially different than changes offered and proposed by the employer during negotiations. Plaintiffs' fur-

ther point out that the only offer made by Tex-Cal with respect to pension fund contributions was the one which the union accepted, 10 cents per employee hour.

ISSUE

At issue here is the extent that an employer can unilaterally change his obligations pursuant to an expired collective bargaining agreement when negotiations for a new agreement have reached an impasse.

DISCUSSION

■ Plaintiffs' position is correct. Defendant builds its argument around literally construing language such as that found in the Ninth Circuit decisions of *American Distributing* and *Produce Dairy, supra,* which indicate that an employer can make unilateral changes upon a bargaining impasse. These cases, however, do not discuss the *scope* of the unilateral changes an employer can make.

One Ninth Circuit case, *Peerless Roofing, supra,* does shed some interesting light on what type of changes an employer can make upon an impasse. In that decision, the employer stopped making pension fund contributions after its collective bargaining agreement with the union expired. The employer argued that it did not owe the contributions since there was an impasse in negotiations for a new contract and the termination of pension contributions was reasonably comprehended in the terms of its prior offers to the union. The court held against the employer, finding it had never proposed to the union the termination of pension fund payments. Furthermore, the court stated, "because we hold that the change was not reasonably comprehended, we do not reach the question of impasse." 641 F.2d at 735.

Further support for this position is found in 1 C. Morris, *The Developing Labor Law* 636 (2nd ed. 1983) which concludes: "[w]hen impasse is reached, the employer may make unilateral changes in working conditions, but such changes must not be substantially different or greater than any offers which the employer proposed during the negotiations."

In the instant case, there is no indication that during the course of negotiations Tex-Cal ever proposed *not* paying pension benefits. In fact, the evidence shows that Tex-Cal never waivered from the 10 cents per hour rate. The union sought to negotiate a higher rate, but Tex-Cal stood firm at 10 cents per hour. And this is the same rate of contribution that Tex-Cal had paid under the expired agreement.

CONCLUSION

The Court now decides the issue presented by holding that the defendant did not have the right unilaterally to discontinue payments to the Juan de la Cruz Pension Fund during the period August 5, 1980, through June 11, 1981. It follows that, pursuant to 29 U.S.C. 1132(g)(2)(A), plaintiffs are entitled to judgment against defendant for unpaid pension contributions which have been stipulated to be in the amount of $37,961.30.

In addition, plaintiffs are entitled under subsection 1132(g)(2)(B) to interest in the amount of $25,870.18. This same amount of $25,870.18 is assessed again as liquidated damages under subsection 1132(g)(2)(C). Plaintiffs are therefore entitled to collect from defendant the total sum of $89,701.66.

The foregoing shall constitute Findings of Fact and Conclusions of Law in addition to formal Findings of Fact and Conclusions of Law made and entered herein:

### FORMAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Jurisdiction of this action is properly in this Court pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974, Public Law 93–406, 88 Stat. 829, as amended ("ERISA"), 29 U.S.Code §§ 1132 and 1145. *Laborer's Health and Welfare Fund for Northern California v. Hess,* 594 F.Supp. 273 (N.D. Cal.1984).

2. Venue in this action is proper pursuant to the clause of the Pension Fund Declaration of Trust (Exhibit A, Article II,

§ 8(d), p. 10) which provides that the county in which an employer's contributions are payable shall be the proper county in which to institute legal proceedings for collection. Employer's payments were and are payable in the County of Los Angeles, State of California, pursuant to notification by the Pension Fund on June 18, 1980.

3. This action is brought on behalf of a multi-employer pension fund for the benefit of employees employed by defendant Tex-Cal between August 5, 1980 and June 11, 1981, for which period contributions were not made to the pension fund on behalf of said employees.

4. Pursuant to ERISA, defendant Tex-Cal was required to continue payments to the Pension Fund until its Pension Fund obligation was lawfully terminated. (*Hess, supra.*) Defendant Tex-Cal failed lawfully to terminate its Pension Fund obligation (e.g., *Peerless Roofing Co., Ltd. v. N.L. R.B.*, 641 F.2d 734 [9th Cir.1981]) by failing to negotiate with the United Farm Workers regarding the termination. Tex-Cal is therefore required to make contributions for the period from August 5, 1980 through June 11, 1981, on behalf of its covered employees.

5. Moreover, under the mandates of ERISA, Tex-Cal was required to notify the pension fund and its employees of the termination of contributions. Having failed to do so, Tex-Cal is required to make contributions for the period from August 5, 1980 through June 11, 1981, on behalf of its covered employees.

6. Because of defendant Tex-Cal's breach of its obligation under ERISA, plaintiffs Maria Carranza and Margaret Espinoza on behalf of the class members and Kent Winterrowd on behalf of the Pension Fund are entitled to recover for the benefit of the Pension Fund and those employees who worked for Tex-Cal during the period August 5, 1980 through June 11, 1981, the principal amount of $37,961.30 in unpaid contributions pursuant to Section 502(g)(2)(A) of ERISA, 29 U.S.C. 1132(g)(2)(A); interest as computed on the basis of section 6621 of the Internal Revenue Code in the amount of $25,870.18 pursuant to section 502(g)(2)(B) of ERISA; and liquidated damages in the amount of $25,870.18, pursuant to section 502(g)(2)(C) of ERISA.

7. The Clerk is directed to serve copies of this Decision herein upon counsel of record for all parties.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## JUDGMENT

The Court having heretofore made and entered its Decision, Findings of Fact and Conclusions of Law, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Judgment is entered in favor of plaintiffs and against defendant.

2. Pursuant to 29 U.S.C. § 1132(g)(2)(A), (B) and (C), plaintiffs shall have and recover the sum of $89,701.66, consisting of principal in the amount of $37,961.30 in unpaid contributions; interest in the amount of $25,870.18; and an additional amount in liquidated damages of $25,870.18.

3. Plaintiffs shall have and recover their costs of suit incurred herein, which are hereby taxed in the sum of $_____.

4. The Clerk is directed to serve copies of this Judgment upon counsel of record for the parties.