775 F.2d 1042
 120 L.R.R.M. (BNA) 3097, 54 USLW 2262,
103 Lab.Cas. P 11,609
 LUMBER PRODUCTION INDUSTRIAL WORKERS LOCAL # 1054, et al.,
Plaintiffs- Appellees,
v.
WEST COAST INDUSTRIAL RELATIONS ASSOCIATION, INC., a
California Corporation; American Executive
Services, Inc., a California
corporation, Defendants- Appellants.
 No. 84-4218.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 26, 1985.
Decided Nov. 1, 1985.
 
 Harlan Bernstein, Portland, Or., Herman L. Wacker, Davies, Roberts, Reid, Anderson, & Wacker, Seattle, Wash., for plaintiffs-appellees.
 Garry G. Mathiason, Henry D. Lederman, Jennifer J. Walt, San Francisco, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Western District of Washington.
 Before WALLACE, FARRIS, and HALL, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Lumber Production Industrial Workers (the union) brought suit against two labor consultants, West Coast Industrial Relations Association, Inc. and American Executive Services, Inc., for tortious interference with a prospective contractual relationship. The labor consultants appeal from the district court's order denying their motion to dismiss which was based upon a theory of preemption. We have jurisdiction under 28 U.S.C. Sec. 1292(b), and we reverse and remand.
 
 
 2
 * The union has represented employees at the Everett facility of E.A. Nord Company, Inc. (Nord) for over 25 years. During that time, Nord and the union have entered into a number of collective bargaining agreements to govern the terms and conditions of employment. The most recent agreement expired on June 30, 1983, and contained no language indicating that it was to remain in effect after that date during the negotiation for a new contract. Nord retained one of the labor consultants to negotiate a new contract with the union.
 
 
 3
 The parties held a series of unsuccessful bargaining sessions between June 16 and July 13, 1983, to negotiate the terms and conditions of a new contract. Negotiations broke off on July 13, and the union initiated a strike against Nord. On July 29, the union filed an unfair labor practice claim with the Regional Director of the National Labor Relations Board (the Board), alleging that Nord had engaged in bad faith bargaining in violation of sections 8(a)(5) and (1) of the National Labor Relations Act (NLRA), 29 U.S.C. Sec. 158. The Regional Director investigated the union's claim and determined that there was insufficient evidence of bad faith to support the charge and dismissed the complaint. The Board upheld the dismissal on appeal.
 
 
 4
 On November 14, 1983, the union filed an action in state court against the labor consultants on behalf of itself and its Nord-employee-members. The union alleged that the labor consultants had deliberately and maliciously interfered with the union's prospective contractual relationship by inducing Nord to utilize their services in order to frustrate the union's collective bargaining objectives, to encourage employee dissatisfaction with the union, and to force a strike that would enable Nord to replace its existing work force and to decertify the union. The union sought damages for itself in the amount of lost union dues and for its members in the amount of lost wages and fringe benefits.
 
 
 5
 The labor consultants removed the action to federal district court under 28 U.S.C. Sec. 1441(a) on the basis of diversity and arguably federal question jurisdiction. 28 U.S.C. Secs. 1331, 1332. They then filed a motion to dismiss pursuant to rule 12, Fed.R.Civ.P., or, in the alternative, for summary judgment under rule 56, Fed.R.Civ.P., claiming that the union's complaint was based on conduct that arguably constituted bad faith bargaining within the exclusive jurisdiction of the Board and that the union's state law claim was preempted by section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185. The district court issued an order denying in part and striking in part the motion of the labor consultants. The district court recharacterized the union's complaint as stating a federal cause of action under section 301(a), which creates an exception to the general rule that the Board possesses exclusive jurisdiction over unfair labor practices.
 
 
 6
 The labor consultants filed a motion asking for reconsideration and for certification of an interlocutory appeal under 28 U.S.C. Sec. 1292(b). The district court denied the motion for reconsideration but certified the order for interlocutory appeal. The labor consultants timely petitioned for permission to bring an interlocutory appeal, which we granted.
 
 II
 
 7
 The labor consultants contend that the district court erred in assuming subject matter jurisdiction under section 301(a), and that the conduct alleged in the union's complaint is within the exclusive jurisdiction of the Board. We review the district court's determination of subject matter jurisdiction de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 8
 The Board possesses exclusive jurisdiction over activities that threaten to interfere with national labor policy. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 242-45, 79 S.Ct. 773, 778-79, 3 L.Ed.2d 775 (1959) (Garmon ). Congress entrusted the administration of labor policy to the Board in order "to avoid conflicting regulation of conduct by various official bodies" and to promote a unified development of labor policy. Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge, 403 U.S. 274, 285-86, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473 (1971) (Motor Coach Employees ); Garmon, 359 U.S. at 242, 79 S.Ct. at 778. Additionally, Congress recognized the need for an administrative agency having the necessary specialized knowledge and cumulative experience to resolve conflicts associated with this nation's industrial relations. Garmon, 359 U.S. at 242, 79 S.Ct. at 778. However, Congress carved out an exception to the general rule of exclusive jurisdiction in section 301(a) of the LMRA, 29 U.S.C. Sec. 185(a), which gives both federal and state courts subject matter jurisdiction over suits alleging a violation of a contract between an employer and a labor organization that represents employees engaged in an industry affecting interstate commerce. Motor Coach Employees, 403 U.S. at 298-99, 91 S.Ct. at 1923-24. If an activity constituting an unfair labor practice also allegedly violates a collective bargaining agreement, then the courts and the Board exercise concurrent jurisdiction. Smith v. Evening News Association, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962); Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc., 639 F.2d 487, 490 (9th Cir.1980).
 
 
 9
 We have previously determined that to assert jurisdiction under section 301(a), "[a]ll that is required ... is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of contract." Painting and Decorating Contractors Association v. Painters and Decorators Joint Committee, 707 F.2d 1067, 1071 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984). In Carpenters Southern California Administrative Corp. v. Majestic Housing, 743 F.2d 1341 (9th Cir.1984), we emphasized that the rights and liabilities of the parties to an action under section 301(a) must be a product of the bargaining agreement itself, and not of some other origin. Id. at 1345.
 
 
 10
 The union does not contend that the district court has section 301(a) jurisdiction to enforce the terms of an existing collective bargaining agreement. Nor can the union assert that an agreement was in force at the time the alleged breach occurred, as the collective bargaining agreement between Nord and the union had expired and contained no continuation clause. Rather, the union suggests that the district court has jurisdiction under section 301(a) because the union possessed a property interest in the form of an implied contract with Nord based on 25 years of past collective bargaining agreements; an implied contract that requires Nord to renew the old contract or enter into a new one.
 
 
 11
 No case has been cited to us, nor are we aware of any, that has recognized an implied labor contract right based on a past bargaining relationship. Such a position would be a radical departure from long-standing labor policy. Section 8(d) of the NLRA, 29 U.S.C. Sec. 158(d), specifically states that the obligation to bargain collectively "does not compel either party to agree to a proposal or require the making of a concession." The underlying theme of our national labor policy is based on the concept that "free opportunity for negotiation with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments and agreements which the Act in itself does not attempt to compel." NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 628, 81 L.Ed. 893 (1937); see also NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 282-83, 92 S.Ct. 1571, 1579-80, 32 L.Ed.2d 61 (1972) (Congress did not intend the NLRA to compel any agreement); H.K. Porter Co. v. NLRB, 397 U.S. 99, 102, 90 S.Ct. 821, 822-23, 25 L.Ed.2d 146 (1970) (the Board cannot compel an employer to agree to a particular substantive provision). If we were to adopt the union's implied contract theory, we would be rejecting the fundamental principle of free collective bargaining and would impose, under the guise of a common-law principle of implied contract, the very concept Congress refused to include within the NLRA: compulsory acceptance of a collective bargaining agreement. See S.Rep. No. 573, 74th Cong., 1st Sess. 12 (1935). We hold that collective bargaining agreements expire according to their own terms and neither employers nor unions have any implied obligation to enter into a new agreement.
 
 
 12
 It logically follows that an expired agreement cannot serve as the basis for a proper exercise of jurisdiction under section 301(a). Cement Masons Health & Welfare Trust Fund v. Kirkwood-Bly, Inc., 520 F.Supp. 942, 944 (N.D.Cal.1981), aff'd, 692 F.2d 641 (9th Cir.1982). Any obligation that Nord had to continue paying wages and making contributions while negotiations for the new agreement were taking place resulted from section 8(a)(5) of the NLRA, 29 U.S.C. Sec. 158, which makes it an unfair labor practice for an employer to change unilaterally the terms and conditions of employment following the expiration of the agreement, Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Trust Fund, 654 F.2d 625, 627-28 (9th Cir.1981), and not from a contract within the definition of section 301(a).
 
 
 13
 The district court did not rely on the union's argument that it possessed an implied contract based on past bargaining agreements. Rather, the district court assumed jurisdiction under section 301(a) after concluding that its "operative language ... should be construed broadly to include within its scope tort actions alleging breach of prospective contractual relations" (emphasis added), relying upon Wilkes-Barre Publishing Co. v. Newspaper Guild, 647 F.2d 372 (3d Cir.1981), cert. denied, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) (Wilkes-Barre ). In Wilkes-Barre, an employer brought a three-count suit in federal court against a union and guild alleging, among other things, tortious interference with a collective bargaining agreement. In that sense, Wilkes-Barre is factually similar to this case, but the similarity ends there. Wilkes-Barre is distinguishable because the Third Circuit premised its analysis of section 301(a) on the basis that a valid collective bargaining agreement existed. Id. at 374-75. Although the term of the contract had expired, the instrument contained a duration and renewal clause which stated that the terms of the contract would remain in effect during the negotiation of a new contract. Thus, the contract by its own terms continued to exist and to bind the parties during this negotiation period. The Third Circuit specifically concluded that "[a]n essential element of the [section 301(a) ] cause of action ... is a violation of the collective bargaining agreement." Id. at 380-81. Consequently, we do not read Wilkes-Barre as extending section 301(a) jurisdiction to claims for breach of a prospective contractual relationship.
 
 
 14
 In addition to its implied contract and Wilkes-Barre argument, the union also attempts to justify the district court's exercise of section 301(a) jurisdiction because of the increase in employers' use of labor consultants to negotiate collective bargaining agreements. The union suggests that section 301(a) should be interpreted broadly to alleviate such problems and preserve industrial peace.
 
 
 15
 We express no opinion as to the legitimacy of the union's claim that labor organizations are being threatened by labor consultants who encourage employers to commit unfair labor practices in an attempt to keep companies "union-free." See generally House Subcommittee on Labor Management Relations, 96th Cong., 2d Sess., Report on the Pressures in Today's Workplace 25-50 (Comm.Print 1980). If the problem of labor consultants is as serious a threat to our national labor policy as the union contends, then its resolution is best left to the legislative and not to the judicial branch. Until such time as Congress makes it clear that section 301(a) jurisdiction is not limited to actions based on a breach of contract, as its language indicates, we will continue to interpret it as not granting jurisdiction over claims of a breach of a prospective contractual relationship. Therefore, the district court erred in assuming jurisdiction over the union's claim under section 301(a).
 
 III
 
 16
 As an alternative basis for jurisdiction, the union argues that the district court can hear the state law tort claim under 28 U.S.C. Sec. 1332. The labor consultants contend that the Board has exclusive jurisdiction over the allegations of misconduct contained in the union's complaint, and that the state tort action is preempted by federal law. The district judge did not initially address this issue as she relied on section 301(a) for jurisdiction. However, in certifying her order for interlocutory appeal under 28 U.S.C. Sec. 1292(b), the district judge observed that if the "plaintiffs' claim ... [did] not arise under section 301, then exclusive jurisdiction over this action would be vested in the NLRB." Record at 231. We review this question of subject matter jurisdiction de novo. Clayton v. Republic Airlines, Inc., 716 F.2d 729, 730 (9th Cir.1983).
 
 
 17
 The general rule of preemption in labor cases is that if the activity relied on as the basis for a suit is "arguably subject to Sec. 7 or Sec. 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." Garmon, 359 U.S. at 245, 79 S.Ct. at 779; see also Motor Coach Employees, 403 U.S. at 285-86, 91 S.Ct. at 1917. In two additional cases, the Supreme Court more fully articulated the applicable standard for determining questions of preemption. In Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), a union picketed Sears for hiring non-union employees. Sears filed a state action in trespass to enjoin the picketing. The Court stated that the critical determination for preemption purposes was whether this case involved an identical controversy to that which could have been brought before the Board. Id. at 197, 98 S.Ct. at 1757. Consequently, "the decision to pre-empt ... state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of permitting the state court to proceed." Id. at 189, 98 S.Ct. at 1753, quoting Vaca v. Sipes, 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). Because the state claim in Sears focused on the location of the picketing and the federal labor claim would have focused on the purpose of the picketing, the state claim was not preempted.
 
 
 18
 In Local 926, International Union of Operating Engineers v. Jones, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983), the Court found the Board to have exclusive jurisdiction under a set of facts very similar to the case before us. In Jones, a supervisor was discharged and filed a section 8(b)(1)(A) & (B) unfair labor practice claim with the Board. The Board dismissed the claim for lack of evidence and, rather than appeal the decision, the supervisor filed suit in state court to recover in tort for the union's interference with his employment contract. The Court initially observed that pre-emption was appropriate if the conduct the state seeks to regulate or to make the basis of a state law claim is arguably protected or prohibited by the NLRA. Id. at 676, 103 S.Ct. at 1459. However, the Court recognized that preemption is inappropriate if the involved conduct is only of peripheral federal concern under the NLRA or if it involves a significant state interest that weighs so heavily by comparison to the Board's interest in exercising exclusive jurisdiction, that congressional intent to deprive the state of its power "could not be inferred." Id.; see also Garmon, 359 U.S. at 243-44, 79 S.Ct. at 778-79. The Court found that the supervisor's discharge was arguably subject to the NLRA because of its coercive effect on other employees. The supervisor argued, however, that his state claim was distinct from an unfair labor practice claim because the latter did not prohibit "noncoerced, but Union-caused discharges," while the state cause of action could be based on a noncoercive union-caused discharge. 460 U.S. at 681, 103 S.Ct. at 1461. The Court rejected his argument and concluded that
 
 
 19
 even if the Georgia law reaches noncoercive interference with contractual relationships, a fundamental part of such a claim is that the Union actually caused the discharge and hence was responsible for the employer's breach of contract. Of course, this same crucial element must be proved to make out a Sec. 8(b)(1)(B) case ... the federal and state claims are thus the same in a fundamental respect, and here the Regional Director had concluded that the Union was not at fault.
 
 
 20
 Id. at 682, 103 S.Ct. at 1462. We interpret Jones as standing for the proposition that if a crucial element of a state court action is identical to an element of an unfair labor practice that is arguably covered by the NLRA, then the state action is preempted.
 
 
 21
 In this case, the union is reasserting the same set of facts that it relied on in its unsuccessful unfair labor practice claim, but this time the suit is directed at the labor consultants. Cf. Carter v. Smith Food King, 765 F.2d 916, 921 (9th Cir.1985) (rejected effort to recharacterize federal claims as state tort claims). The union maintains that its state law claim is not preempted because the labor consultants were acting as independent third parties when they induced Nord to terminate its collective bargaining relationship with the union and the tort was completed prior to any negotiations in which the labor consultants might have been acting as Nord's agents. We disagree.
 
 
 22
 One of the essential elements of the union's claim is that the labor consultants' improper interference caused the termination of the collective bargaining relationship between Nord and the union. See King v. Seattle, 84 Wash.2d 239, 525 P.2d 228, 233 (1974), citing Scymanski v. Dufault, 80 Wash.2d 77, 491 P.2d 1050 (1971); Topline Equipment, Inc. v. Stan Witty Land, Inc., 31 Wash.App. 86, 639 P.2d 825, 829 (1982). The union characterized the labor consultants' improper interference as a plan that included a bargaining strategy intended to frustrate the union in its collective bargaining, to create unrest by making the union appear ineffective, and to force a strike in order to allow Nord to hire new employees and decertify the union. In order for the district court to determine if the union met its burden of proof as to causation, the court would have to examine the fundamental bargaining activities of Nord and the union. Even if we accept the union's argument that the labor consultants were not Nord's agents at the time the tort was committed, the fact remains that the conduct which constitutes an essential element of the union's state law action is the very same conduct that the Board considered in rejecting the union's unfair labor practice claims. The Supreme Court stated in Jones that if the conduct relied on to prove a crucial element in the state action is conduct that is arguably covered by the NLRA, then the state claim is preempted. 460 U.S. at 682, 103 S.Ct. at 1462.
 
 
 23
 The union suggests that our recent decision in Aragon v. Federated Department Stores, Inc., 750 F.2d 1447 (9th Cir.1985) (Aragon ), supports its argument that the state claim is not preempted by federal law. However, Aragon is distinguishable from the instant case because it involved a malpractice charge against a union's counsel. The resolution of the state claim was dependent on "the standard of care the attorney owes the client" and not on an evaluation of conduct that was arguably covered by the NLRA. Id. at 1457. The union's state law claim is different because one of its essential elements would require the district court to delve into the intricacies of the collective bargaining process, a domain we feel is better left to the exclusive jurisdiction of the Board.
 
 
 24
 Finally, the union argues that even if the labor consultants' conduct is arguably prohibited under section 8 of the NLRA, 28 U.S.C. Sec. 158, the state's interest in preventing tortious interference with a contract warrants recognizing an exception to the general rule of exclusive jurisdiction. However, in Jones the Supreme Court held that state claims based on intentional interference with contractual relations are not "so deeply rooted in local law that [the state's] interest in enforcing that law overrides the interference with the federal labor law that prosecution of the state action would entail." 460 U.S. at 683, 103 S.Ct. at 1462; see also Wilkes-Barre, 647 F.2d at 381 (state interest in preventing tortious interference with labor contract does not warrant recognizing an exception to general rule of exclusive jurisdiction). Consequently, we hold that the Board has exclusive jurisdiction over the involved conduct, and that the union's state law claim is preempted.
 
 
 25
 Because the district court did not have jurisdiction pursuant to section 301(a) and because the asserted state claim was preempted by the NLRA, we reverse the order certified to us and remand for dismissal of the action.
 
 
 26
 REVERSED AND REMANDED.