Garnett OVERBY, Plaintiff-Appellant,

v.

CHEVRON USA, INC., Defendant–Appellee.

No. 88–5801.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1989.

Submission Withdrawn June 5, 1989.

Resubmitted June 19, 1989.

Decided Sept. 1, 1989.

Edward M. Fox, Klass, Helman & Ross, Los Angeles, Cal., for plaintiff-appellant.

James S. Bryan, Lawler, Felix & Hall, Los Angeles, Cal., for defendant-appellee.

Before WALLACE, FARRIS and BEEZER, Circuit Judges.

WALLACE, Circuit Judge:

Overby sued Chevron U.S.A., Inc. (Chevron) in state court, alleging wrongful discharge under California law. Chevron removed the action on the basis of federal question jurisdiction, relying on section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). *See* 28 U.S.C. § 1441(b). After Overby amended his complaint to include a racial discrimination claim under 42 U.S.C. § 1981 and additional state law claims, the district court granted summary judgment in favor of Chevron. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We

affirm in part and reverse and remand in part.

I

Overby, a black male, was employed by Chevron from February 21, 1978, until March 12, 1986, when he was terminated for refusing to permit Chevron security personnel to search his person and wallet. Throughout his employment, Overby was represented in collective bargaining by the Oil, Chemical, and Atomic Workers International Union, AFL–CIO, and its Local 1–547 (collectively union), which entered into successive collective bargaining agreements (CBAs) with Chevron. On February 23, 1986, 17 days before his termination, the CBA under which Overby was most recently employed expired. On the eve of its expiration, Chevron advised the union that during negotiations Chevron would continue to respect the terms of the old CBA, with two exceptions: first, Chevron would not deduct union dues from employees' paychecks; and second, employee-management disputes covered by the old CBA would be processed through a grievance procedure, but would not be submitted to arbitration. This action by Chevron was unilateral; it was not the product of collective bargaining. A new CBA was ratified by Chevron employees on May 2, 1986.

In his state court complaint, Overby alleged that Chevron, 200 fictitious Does and "Standard Oil of California," a non-existent entity, had wrongfully discharged him. The legal basis of his claim is opaque. The complaint states that Overby "entered into a written agreement" under which Chevron was "required ... to treat [Overby] in accordance with the prevailing union contract and in conformity with existing employment laws, codes and regulations." The complaint also states that Overby "duly performed all of the conditions of the agreement to be performed on his part for the next eight (8) years." After alleging that Overby was discharged for refusing to consent to a search, the complaint asserts that the "search was retaliatory in nature, in that [Overby], in the past, had ques-

tioned corporate practices of Defendants as they regard [sic] dealings with employees and Defendants' authority to invade the privacy of employees as well as possible racial discrimination in Defendants' job promotion practices." Finally, the complaint states that "the search ... was selective and not based on probable cause that a violation of company safety rules had been committed. Several employees in the same area were not searched. [Overby], who is black, was selected for the purportedly 'random' search." The complaint on its face does not allege a federal claim.

Chevron removed the action on the ground that any state law claims against it were preempted by section 301 of the LMRA. The district court permitted Overby to amend his complaint. After repeating verbatim the allegations of wrongful discharge, the amended complaint included a federal racial discrimination claim under section 1981 and additional state law claims for breach of an implied covenant of good faith and fair dealing, breach of an implied-in-fact covenant not to be discharged without good cause, and intentional infliction of emotional distress. As the basis for his section 1981 claim, Overby alleged that he was discharged in retaliation for filing in April 1983 a racial discrimination claim with the Equal Employment Opportunity Commission (EEOC), which he voluntarily withdrew in September 1983. The district court granted summary judgment in favor of Chevron, holding that (1) Overby's state law claims were preempted by section 301, (2) any claims Overby could assert under section 301 were barred by the statute of limitations, and (3) Overby failed to establish a prima facie case on his section 1981 claim.

We need not address whether Chevron's removal of the action was proper. Overby did not object to removal and, at the time the district court entered judgment on the merits, Overby had amended his complaint to state a federal claim under section 1981. The district court therefore had subject matter jurisdiction. *See Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972);

*Sorosky v. Burroughs Corp.*, 826 F.2d 794, 798 (9th Cir.1987).

We review a summary judgment independently. *Collins v. Womancare, A Feminist Woman's Health Center*, 878 F.2d 1145, 1147 (9th Cir.1989). "We apply the same standard used by the trial court under Fed.R.Civ.P. 56(c)." *Id.* "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Judie v. Hamilton*, 872 F.2d 919, 920 (9th Cir.1989).

II

We first address Overby's racial discrimination claim under section 1981. We must decide whether the conduct about which Overby complains is protected by section 1981.

Section 1981 protects the rights of all persons, regardless of race, "to make and enforce contracts." 42 U.S.C. § 1981. The Supreme Court in *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (*Patterson*), recently clarified the scope of section 1981. The Court confirmed that section 1981 is not "a general proscription of racial discrimination in all aspects of contract relations." *Id.* 109 S.Ct. at 2372. Rather it protects just two rights: (1) the right to make contracts and (2) the right to enforce contracts. *Id.* The right to make contracts "extends only to the *formation* of a contract, but not to problems that may arise later from the conditions of continuing employment." *Id.* (emphasis added). Postformation conduct, such as breach of contract, or imposition of discriminatory conditions, does not implicate the right to make a contract and is thus not protected by the statute. *Id.* at 2372–73.

The Court further explained in *Patterson* that the right to enforce contracts "embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Id.* at 2373. Section 1981 protects against "efforts to im-

pede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." *Id.* For example, in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 664–69, 107 S.Ct. 2617, 2622–25, 96 L.Ed.2d 572 (1987) (*Goodman*), the Court held that labor unions had violated black employees' right to enforce contracts by systematically refusing to file racial discrimination grievances on the employees' behalf against the employer. There, the collective bargaining agreement included an express provision binding both the employer and the unions not to discriminate on the basis of race. *Id.* 482 U.S. at 666, 107 S.Ct. at 2624. Animating the Court's analysis was the recognition that the unions bear the responsibility to enforce employees' rights under employment contracts and to process grievances against employers. *See Patterson,* 109 S.Ct. at 2373. The Court in *Goodman* found that "[t]he Unions, in effect, categorized racial grievances as unworthy of pursuit and, while pursuing thousands of other legitimate grievances, ignored racial discrimination claims on behalf of blacks, knowing that the employer was discriminating in violation of the contract. Such conduct ... violated ... § 1981." *Goodman,* 482 U.S. at 669, 107 S.Ct. at 2625.

Overby does not claim that Chevron prevented him from entering into a contract. To the contrary, Overby and Chevron formed a contract on February 21, 1978. Rather, he complains of postformation conduct: retaliatory discharge. Overby's right under section 1981 "to make" a contract is therefore not implicated. *Patterson,* 109 S.Ct. at 2372–73. Nor does Overby allege that Chevron obstructed his access to courts or any other dispute resolution process, such as that provided by the EEOC. Overby does not contend that Chevron prevented him from filing the EEOC claim in April 1983. The record reveals that Overby indeed filed the claim. He concedes that he withdrew the claim voluntarily, not under threat of adverse consequences. Moreover, Overby does not charge that Chevron impeded his efforts to file any subsequent claims with the EEOC. Overby does not suggest that he even attempted to file subsequent claims. As opposed to the employees in *Goodman* whose grievances lay dormant despite their desire for redress, Overby was free to and did pursue his claims of racial discrimination with the diligence he deemed appropriate.

We refuse to interpret Chevron's alleged conduct as an effort to "impede" or "obstruct" Overby's right to enforce his contract in violation of section 1981. *Id.* at 2373. Retaliatory discharge, the allegation levied against Chevron, is specifically proscribed by section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a). Though an argument could be concocted that such conduct impedes, in some broad sense, Overby's access to the EEOC, the Court in *Patterson* counseled against stretching the meaning of section 1981 to protect conduct already covered by Title VII. 109 S.Ct. at 2375. The Court reasoned that Title VII contains a comprehensive and detailed scheme, including well-crafted conciliatory procedures, for resolving disputes regarding employment discrimination. *Id.* at 2374–75. Reading section 1981 too broadly would permit plaintiffs to circumvent Title VII's detailed statutory prerequisites to bringing an action in federal court, thereby frustrating Title VII's conciliatory goals and disrupting the delicate balance struck between employers and employees' rights. *Id.* at 2374–75 & n. 4. This concern is particularly apt where, as here, the very conduct complained of centers around one of Title VII's conciliatory procedures: the filing of an EEOC complaint. Because section 704(a) of Title VII proscribes Chevron's alleged conduct, we therefore decline "to twist the interpretation of another statute (§ 1981) to cover the same conduct." *Id.* at 2375. We hold that the district court properly granted summary judgment in favor of Chevron on Overby's section 1981 claim.

## III

We next address the district court's ruling that Overby's state law claims were preempted by section 301 of the LMRA. Overby's state complaint on its face did not allege a federal claim. Chevron removed the action on the ground that section 301

completely preempted the state wrongful discharge claim, thereby converting Overby's complaint into one stating a federal question. According to Chevron, the resolution of Overby's claim requires reference to and interpretation of the CBA. Chevron concedes that the CBA had expired when Overby was terminated, but argues that the CBA nonetheless governed the terms of Overby's employment relative to this action: whether Chevron may discharge Overby for refusing to consent to a search. Chevron argues that because it advised the union that it would continue to respect the CBA, with certain exceptions, during post-expiration contract negotiations, the CBA remained in effect at the time of Overby's termination for purposes of section 301 jurisdiction.

■ Section 301 of the LMRA completely preempts any state law claims dependent on the meaning of a collective bargaining agreement, thereby converting such state claims into federal ones. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988) (*Lingle*). Yet collective bargaining agreements expire according to their own terms. *Lumber Production Industrial Workers Local #1054 v. West Coast Industrial Relations Association, Inc.*, 775 F.2d 1042, 1046 (9th Cir.1985) (*Lumber Production*). One party cannot unilaterally extend an expired collective bargaining agreement; the rights and liabilities of parties under section 301 must be the product of collective bargaining. *Id.* For purposes of section 301 of the LMRA, the expired agreement no longer exists. Thus, state law claims based on an expired collective bargaining agreement are not preempted by section 301. *Office and Professional Employees Insurance Trust Fund v. Laborers Funds Administrative Office of Northern California, Inc.*, 783 F.2d 919, 921 (9th Cir.1986) (*Office and Professional Employees*); *Lumber Production*, 775 F.2d at 1046.

The district court therefore improperly relied on section 301 as a ground for preemption of Overby's state law claims. Chevron may not extend the CBA through unilateral conduct such as advising the union of its intention to do so. The resolution of Overby's state law claim is not dependent on the meaning of the CBA because the CBA no longer existed when Overby was terminated. *See Lingle*, 108 S.Ct. at 1881. The district court cannot enforce an expired CBA in a section 301 action.

## IV

■ After expiration of a collective bargaining agreement and extinguishment of section 301 jurisdiction, section 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(5), requires an employer to maintain the status quo until negotiations reach an impasse. *Office and Professional Employees*, 783 F.2d at 921–22; *Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co.*, 779 F.2d 497, 500 (9th Cir.1985), *aff'd*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988); *Lumber Production*, 775 F.2d at 1046. An employer's unilateral change in the terms and conditions of employment after an agreement expires constitutes an unfair labor practice under section 8 of the NLRA. *Lumber Production*, 775 F.2d at 1046. The terms of an expired collective bargaining agreement "survive" in a limited sense of defining an employer's obligation to maintain the status quo under section 8 of the LMRA. *Office and Professional Employees*, 783 F.2d at 921–22.

Sections 7 and 8 of the NLRA preempt state law claims based on activity arguably protected or prohibited by the NLRA. *International Longshoremen's Association, AFL–CIO v. Davis*, 476 U.S. 380, 381, 394, 106 S.Ct. 1904, 1907, 1914, 90 L.Ed.2d 389 (1986). Congress granted exclusive original jurisdiction over claims within the scope of the NLRA to the National Labor Relations Board. "As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982) (*Mullins*), *quoting*

*San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). We therefore remand Overby's state law claims for the district court to decide if it wishes to exercise its discretion to retain jurisdiction over these claims. If it retains jurisdiction, the district court must determine whether these claims are preempted by sections 7 and 8 of the NLRA. In the event the claims are preempted by the NLRA, the district court must dismiss the action for lack of jurisdiction. *Mullins,* 455 U.S. at 83, 102 S.Ct. at 859.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.