Barney HENDERSON, Plaintiff,

v.

MERCK & COMPANY, INC., Defendant.

No. CIV. A. 97–4006.

United States District Court, E.D. Pennsylvania.

March 16, 1998.

Oscar S. Schermer, Jeffrey D. Schaffer, Philadelphia, PA, for Plaintiff.

Michael S. Burkhardt, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Barney Henderson ("Henderson") brings this suit against his former employer, Defendant Merck & Company, Inc. ("Merck"), asserting state law claims of breach of contract, breach of the covenant of good faith and fair dealing, wrongful discharge, intentional infliction of emotional distress, and detrimental reliance. All of the claims are founded upon Pennsylvania law.

Merck files a motion to dismiss, or in the alternative, for summary judgment, contending that Henderson's state law claims are preempted by Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 et. seq. ("Section 301"), because Henderson's employment with Merck was governed by the terms and conditions of a collective bargaining agreement between Merck and Local 8–86 of the Oil, Chemical, and Atomic Workers International Union("Local 8–86"). Henderson filed a response to Merck's Motion, and also filed a Cross Motion to Remand to state court for lack of subject matter jurisdiction. Both parties have filed several supplemental briefs on the Motions and have provided evidence regarding federal jurisdiction. This matter is presently before me on both of these motions, and they will be dealt with together since the principal issue in deciding both is whether Henderson's state law claims are preempted under § 301.

## I. *Factual Background*

Merck employed Henderson as an equipment and glassware washer from October 6, 1976 until May 1, 1995. In 1991, Henderson was referred by Merck for treatment of an alcohol problem. As a result of this referral, he was required to report to Merck's physician on a weekly basis for a period of one year. In 1994, Henderson voluntarily entered an alcohol treatment program through the Veterans' Administration and notified his supervisor at Merck that he had entered this program. After the notification, · Merck again required Henderson to report to Merck's physician on a weekly basis. Merck discharged Henderson on April 5, 1995, because of his failure to attend one of his required doctor's appointments for monitoring his alcohol problem.

According to the complaint, when Henderson began his employment, Merck offered an employment manual as an "inducement" for employment, and Henderson entered into employment in reliance on the manual's promises and conditions. Compl. ¶¶ 5, 24–26. Henderson attaches four pages from the employment manual to his complaint, one of which contains provisions encouraging employees to seek treatment of alcohol problems. Compl., Exh. A, "Policy on Alcoholism." [1] The page entitled "Policy on Alcoholism" is dated "effective 4/1/85." Compl., Exh. A.

On April 10, 1995, Henderson filed a grievance against Merck regarding his discharge, pursuant to the grievance and arbitration provisions of a collective bargaining agreement, which Henderson was party to as a member of Local 8–86. Comp. ¶ 12. As a result of the union grievance process, Merck offered Henderson his job back on the condition that he sign a settlement agreement, which, *inter alia*, would have converted his discharge into a thirty day unpaid suspension and placed him on probation for a two year period. Compl. ¶ 13, Exh. B. Henderson de-

clined the settlement agreement and accepted retirement.

Henderson filed this action in March 1997 in the Court of Common Pleas for Philadelphia County alleging state law claims of breach of contract based on the employment manual, breach of the covenant of good faith and fair dealing, wrongful discharge, intentional infliction of emotional distress, . and detrimental reliance. The complaint did not make any reference to a collective bargaining agreement. On June 12, 1997, Merck removed the action to this Court pursuant to 28 U.S.C. § 1441, arguing that because Henderson was protected by a collective bargaining agreement, Henderson's state law claims are preempted by § 301.

The parties dispute whether Henderson was protected by a collective bargaining agreement throughout his employment with Merck. I find that the evidence submitted by both parties on this issue shows that Henderson was protected by a collective bargaining agreement between Merck and Local 8–86 from October 6, 1976, Henderson's first day of work at Merck, until May 1, 1995, Henderson's final day of work. *See* Defendant's Supplemental Brief on Jurisdiction ("Def.'s Suppl. Jur."), Exh. A (attaching Master Agreements and Local Supplemental Agreements between Merck and Local 8–86 dated May 1, 1975, May 1, 1978, May 1, 1981, May 1, 1984, May 1, 1988, April 30, 1991, and May 1, 1995); Def.'s Suppl. Jur., Exh. B (attaching plaintiff's voluntary union check-off authorization for Local 8–86, signed by Henderson on October 6, 1976); Pulli Decl.

## II. *Motion for Remand*

In its notice of removal, Merck contends that this court has jurisdiction over plaintiff's claims because they can only be resolved by reference to a collective bargaining agreement, and, therefore, are subject to complete preemption by § 301, which exclusively governs claims arising under collective bargaining agreements. Henderson argues

---

1. Henderson states in supplemental pleadings that the full and complete copy of the employee manual is in the sole possession of Merck. *See* Plaintiff's Supplemental Brief on Jurisdiction ("Pl.'s Suppl. Jur."), at 2. Merck states that

"there are no documents of any independent contract between Plaintiff and Defendant." *See* Defendant's Supplemental Brief on Jurisdiction ("Def.'s Suppl. Jur."), at 1.

that his claims are not based on a collective bargaining agreement, but on a separate and independent contract (stemming from the employment manual and assorted oral and implied promises) and, therefore, are properly remanded to state court.

In deciding whether this action should be remanded, I must resolve two inquiries: first, whether Henderson's complaint relies upon federal law as a ground for recovery, and, second, if it does not, whether it states a claim that is "completely preempted" by federal law.

## A. Well–Pleaded Complaint Rule

■ Ordinarily, whether a case is one "arising under" the Constitution, laws or treaties of the United States, and therefore properly removable to the district court is determined by the district court's examination of a plaintiff's claims under the well-pleaded complaint rule. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 353 (3d Cir.1995). The well-pleaded complaint rule requires that the federal question be presented on the face of the plaintiff's complaint. *See Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Henderson's complaint seeks damages for breach of contract, breach of the covenant of good faith and fair dealing, wrongful discharge, intentional infliction of emotional distress, and detrimental reliance. In no instance does the complaint rely upon federal law. Therefore, I will have jurisdiction only if Henderson's claims fall into one of the narrow areas that Congress has decided to completely preempt. *See Franchise Tax Board,* 463 U.S. at 23.

## B. Complete Preemption

■ The doctrine of complete preemption applies only when it is found that Congress intends that a federal statute completely

preempt an area of state law, so that any complaint alleging that area of state law is presumed to allege a claim arising under federal law, and, thus, may be removed to federal court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Supreme Court has held that the Labor Management Relations Act is such a statute. *See Franchise Tax Board,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420.

■ Section 301(a) of the Labor Management Relations Act ("LMRA") provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).[2] Federal substantive law governs actions for enforcement of collective bargaining agreements. *See Franchise Tax Bd.,* 463 U.S. at 23; *Milione v. Hahnemann Univ.,* 1990 WL 73039, at *2 (E.D.Pa. May 29, 1990) (Reed, J.). Therefore, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from branches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202 at 211, 105 S.Ct. 1904, 85 L.Ed.2d 206.

■ In order for there to be § 301 preemption, the plaintiff must plead an action that requires interpretation of the collective bargaining agreement. *Caterpillar,* 482 U.S. at 398. The fact that as part of a defense to a state law contract action an employer might raise "a federal question, even a § 301 question" does not mean that the claim is preempted by section 301. *Id.* Furthermore, "[n]ot every dispute concerning employment, or tangentially involving a provision of the collective bargaining agreement, is preempted by Section 301 or other provisions of federal labor law." *Id.* However, when resolution of a state law claim is "substantially

2. Although the statutory language refers only to employers and unions and does not expressly confer jurisdiction over suits between employees and employers, the Supreme Court has interpreted this provision to create federal jurisdiction over all claims that are substantially dependent upon analysis of the terms of a collective bargaining agreement, regardless of whether the claim is brought by a union or directly by an employee. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Id.; see also Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 399–400, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) ("[i]f the resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law ... is pre-empted and federal labor law principles — necessarily uniform throughout the Nation — must be employed to resolve the dispute.").

◼ Employers and employees who are parties to a collective bargaining agreement may enter into individual contracts that "embody matters not necessarily included within the statutory scope of collective bargaining," to the extent that such contracts are "not inconsistent with a collective agreement or do [ ] not amount to or result from or [are] not part of an unfair labor practice." *J.I. Case Co. v. NLRB,* 321 U.S. 332, 339, 64 S.Ct. 576, 88 L.Ed. 762 (1944). Henderson contends that he and Merck had an independent contract based on the employment manual. Merck responds that Henderson's claims are based on an alleged employment contract that was formed, if at all, concurrently with a collective bargaining agreement, and the terms of that contract are potentially inconsistent with the collective bargaining agreement. Therefore, Merck argues, Henderson's claims substantially depend on the interpretation of the collective bargaining agreement, and, for that reason, are preempted by § 301 of the LMRA. Henderson responds that his state law claims can be resolved independently of the collective bargaining agreement by examining the provisions of the employment manual and the circumstances of his discharge.

Courts have struggled repeatedly with the issue of § 301 preemption of state law claims. The Supreme Court found that the state law claims of the plaintiffs in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), who had independent contracts *prior* to entering into a collective bargaining agreement, were not completely preempted by section 301. Courts, following

the Supreme Court's decision in *Caterpillar,* have allowed state law claims to go forward where based on *prior* independent contracts, but not where plaintiffs alleged the formation of independent contracts *while* governed by a collective bargaining agreement. *See Berda v. CBS,* 881 F.2d 20, 25 (3d Cir.1989) (holding plaintiff's claims not pre-empted where based on individual contract negotiated prior to employee becoming a member of the union's bargaining unit); *see also White v. National Steel Corp.,* 938 F.2d 474 (4th Cir.1991); *Overby v. Chevron USA, Inc.,* 884 F.2d 470, 473–74 (9th Cir.1989).

While courts agree that state law claims are only preempted to the extent that they "substantially depend" on the interpretation of a collective bargaining agreement, they have differed on the more particular question whether in fact there would be substantial dependence in the case before them. *See Berda v. CBS,* 881 F.2d 20, 25 (3d Cir.1989). As the Third Circuit has noted, on similar facts courts have reached different answers to the preemption question. *See id.* (citing cases). The inquiry is inherently strained, of course, in that I must look to the collective bargaining agreement in order to determine whether I must interpret it.

I must analyze whether the instant case falls within the scope of Section 301. First, Henderson's employment with Merck was always governed by the terms and conditions of the collective bargaining agreements between Merck and Local 8–86. Defendant has produced sufficient evidence to show that Henderson was a member of Local Union No. 8–86 during his entire employment with Merck, and his employment was always governed by a collective bargaining agreement. Def.'s Suppl. Jur., Exh. A. Therefore, any independent contract between Merck and Henderson would be formed concurrently with a collective bargaining agreement. Accordingly, I must turn to the particular claims raised in Henderson's complaint and determine whether resolution of these claims requires interpretation of the collective bargaining agreements.

### 1. Contractual Claims

In his claims for breach of contract and detrimental reliance, Henderson alleges that

Merck's oral and implied policies, as well as Merck's employment manual provisions concerning alcohol treatment, constituted terms governing his employment with Merck on which he relied, and that Merck violated those terms by discharging him. Compl. ¶¶ 24–31, 48–51.

■ A breach of contract claim under Pennsylvania law requires:

(1) a definite, intentional offer to be bound,

(2) which is accepted by the other party, and

(3) a meeting of the minds.

See *Morosetti v. Louisiana Land and Exploration Co.*, 522 Pa. 492, 564 A.2d 151 (1989) (citations omitted).

■ Detrimental reliance, which Henderson alleges in Count Five of his Complaint, is actually an element of promissory estoppel. *See, e.g. Raykhman v. Digital Elevator Co.*, 1993 WL 370988 (E.D.Pa. Aug. 30.1993) (interpreting Pennsylvania law). Promissory estoppel requires that:

1) a promise reasonably is made to induce action or forbearance;

2) action or forbearance is induced; and

3) injustice can only be avoided by enforcing the promise.

See *Carlson v. Arnot–Ogden Memorial Hospital*, 918 F.2d 411, 416 (3d Cir.1990)(interpreting Pennsylvania law).

Henderson alleges in these counts that he was induced into employment by, and acted in reliance upon, Merck's oral, implied, and express (in the employment manual) promises with regard to the conditions under which he could be discharged. Thus, Henderson must show that Merck made such promises, apart from the collective bargaining agreement.

■ Henderson has provided no evidence regarding the oral or implied promises allegedly made by Merck. Henderson has, at certain points in the pleadings, asserted that the employment manual forms an independent contract that "predate[s] the existence of any applicable collective bargaining agreement." Plaintiff's Opposition to Motion to Dismiss, at 1. However, the evidence shows that Henderson was always party to a collective bargaining agreement during his employment with Merck, from 1976 to 1995. *See* Def.'s Suppl. Jur., Exh. A. I find that the employment manual, which has effective date April 1985, does not predate Henderson's participation in a collective bargaining agreement. In fact, given that it became effective almost nine years after Henderson began employment and first joined Local 8–86, I do not see how it "was offered as an inducement for the plaintiff's employment," Compl. ¶ 24, nor how "[p]laintiff's acceptance of employment was based, all or in part on said manual," Compl. ¶ 25. Any contract formed by the employment manual would be concurrent with a collective bargaining agreement.

Furthermore, there is no evidence of the formation of an independent contract between Merck and Henderson based on the employment manual at any time. "A written personnel policy may serve as the basis for a cause of action for breach of a provision contained within it it if under all of the circumstances, the parties manifest an intent that it become a legally binding contract." *Curran v. Children's Service Center*, 396 Pa.Super. 29, 578 A.2d 8, 10 (1990); *see also Martin v. Capital Cities Media*, 354 Pa.Super. 199, 511 A.2d 830, 838 (1986)(noting that in such contexts it is the intention of the parties that must be the ultimate guide). "A handbook distributed to employees as inducement for employment may be an offer and its acceptance a contract... It is not sufficient to show only that they had a policy. It must be shown that they intended to offer it as a binding contract." *Morosetti*, 564 A.2d at 152. No evidence has been provided that Merck intended the employment manual to form a legally binding contract.

■ Finally, even if the employment handbook did form an independent contract, I would still have to interpret the provisions of the collective bargaining agreement in order to resolve Henderson's claims for breach of contract and detrimental reliance. Although plaintiff frames his breach of contract and detrimental reliance claims as whether he fully cooperated with defendant's policy on alcohol treatment as articulated in

the employment manual, this question is a sub-issue of the larger inquiry: whether plaintiff's contractual rights were violated by the circumstances of his discharge. In order to resolve that inquiry, the specific terms relating to discharge in the collective bargaining agreement in effect at the time of Henderson's discharge will have to be interpreted, for the collective bargaining agreement gave Merck certain rights and obligations with respect to Henderson's discharge. Specifically, I would have to construe Article V, ¶ 7 of the Local Supplemental Agreement, which provides that "[n]o regular employee shall be discharged except for just cause," in order to determine whether the alleged independent contract conflicted with the collective bargaining agreement. Furthermore, in order to resolve Henderson's claims based upon Merck's alcoholism policy, I would have to interpret the scope of Article I, ¶ 7 of the Local Supplemental Agreement, which requires employees to abide by the existing rules and regulations of the company. *See* Def.'s Suppl. Jur., Exh. A, Article I: Union–Company Relations, *Company's Rules and Regulations,* ¶ 7 ("Employees shall abide by the existing rules and regulations of the Company as well as those that may be issued by the Company from time to time..." and that "[v]iolations of the Company's rules and regulations may result in warnings, suspensions, discharges or other disciplinary actions ...").

Plaintiff has failed to cite any case in which a court has allowed a breach of contract claim based on a contract independent of the collective bargaining agreement brought by a plaintiff who was covered by a collective bargaining agreement at the time that the representations were made. Courts have determined that claims that an employer broke a promise made to an employee *before* the employee entered the bargaining unit or while the employee was *outside* the bargaining unit were not preempted. *See, e.g., White v. National Steel Corp.,* 938 F.2d 474 (4th Cir.1991); *Berda,* 881 F.2d at 25–27. State law claims based on an independent contract made while an employee was protected by a collective bargaining agreement have uniformly been held preempted by

§ 301. *See Milione,* 1990 WL 73039, *4; see also Angst v. Mack Trucks, Inc.,* 969 F.2d 1530, 1537 (3d Cir.1992) (noting that cases in which courts have allowed employees to bring actions against employers solely under state law without federal law preemption of their state law claims all involved state law claims that arose when the aggrieved employees were not subject to collectively bargained labor agreements); *Nipper v. Garage Door Group,* 1992 WL 331326, *5 (D.Kan. Oct. 19, 1992)(holding plaintiff Hegarty's breach of contract claim preempted because it was based on promises allegedly made *while* plaintiff was covered by a collective bargaining agreement).

Henderson's breach of contract and detrimental reliance claims will require interpretation of the collective bargaining agreement, and, therefore, are preempted by Section 301. *See Hamilton v. Vimco Mfg. Co.,* 1990 WL 67163 (E.D.Pa.) (Waldman, J.)(holding plaintiff's breach of contract claim preempted by Section 301 where court would have had to interpret dismissal provisions of collective bargaining agreement in order to assess plaintiff's argument that he was discharged in violation of his alleged independent employee handbook contract).

## 2. Implied Covenant of Good Faith and Fair Dealing

 Henderson also asserts a claim for breach of the implied covenant of good faith and fair dealing. The general duty of good faith and fair dealing in the performance of a contract has been recognized by Pennsylvania courts. *See, e.g., Somers v. Somers,* 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992) (citations omitted). Henderson alleges that Merck failed to comply with its own rules, policies, and procedures in discharging him for missing a scheduled doctor's appointment. Compl. ¶¶ 34–38. Thus, in order to resolve this claim, I would have to interpret the scope of Article I, ¶ 7 of the Local Supplemental Agreement, which requires employees to abide by the existing rules and regulations of the company, in order to determine whether Henderson had abided by the company's rules and regulations. *See* Def.'s Suppl. Jur., Exh. A, Article I: Union–

Company Relations, *Company's Rules and Regulations,* ¶ 7 "Employees shall abide by the existing rules and regulations of the Company as well as those that may be issued by the Company from time to time..." and that ("[v]iolations of the Company's rules and regulations may result in warnings, suspensions, discharges or other disciplinary actions ..."). Accordingly, Henderson's claim for breach of the implied covenant of good faith and fair dealing is also completely preempted under § 301. *See Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 1000 (9th Cir. 1987) (holding that the implied covenant tort is waived where the collective bargaining agreement contains terms concerning job security); *see also Chmiel v. Beverly Wilshire Hotel,* 873 F.2d 1283 (9th Cir.1989) (holding breach of covenant of good faith and fair dealing preempted by § 301).

### 3. Intentional Infliction of Emotional Distress

■ In Count Four of his complaint, Henderson alleges that Merck intentionally inflicted emotional distress upon him by discharging him without good cause and by forcing him to retire involuntarily based upon the terms of the proposed settlement of his grievance. Compl. ¶¶ 45–46. Pennsylvania recognizes a cause of action for intentional infliction of emotional distress and has adopted the definition set forth in the Restatement Second of Torts § 46(1):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subjected to liability for such emotional distress, and, if such, bodily harm to the other results from it, for such bodily harm.

Plaintiff's emotional distress claim arises directly out of his discharge in that it directly challenges Merck's conduct at the time it discharged Henderson and at the time of grievance resolution. Thus, an analysis of plaintiff's tort claim for intentional infliction of emotional distress would require me to analyze and resolve the question of whether Merck properly discharged Henderson. Disposition of this claim is not possible without analyzing and interpreting the terms of the collective bargaining agreement pertaining to just discharge and to grievance procedures. Accordingly, Henderson's claim for intentional infliction of emotional distress is preempted.

### 4. Wrongful Termination

■ Henderson further alleges "wrongful termination sounding in tort" which I will construe as a common law tort claim for wrongful discharge. Henderson, as a union employee, cannot bring a wrongful discharge action against his former employer under Pennsylvania law. *See Cairns v. SEPTA,* 114 Pa.Cmwlth. 321, 538 A.2d 659, 660 (1988); *see also Searcy v. SEPTA,* 1997 WL 152791, at **2–3 (E.D.Pa. Mar.27, 1997) (DuBois, J.)(following the state law cases to conclude that a union employee cannot maintain a claim for wrongful discharge). Therefore, I will dismiss Henderson's wrongful discharge claim.

The fundamental argument underlying each of Henderson's state law claims is that "defendant's actions in firing plaintiff were done willfully and wantonly and without warning or just cause." Compl. ¶ 21. Each of these claims revolves around why and how Merck terminated Henderson's employment. *See* Pl.'s Opp. to Motion to Dismiss, at 8; Compl. ¶¶ 11, 16–18, 21, "The issue at hand is the defendant's reason and motivation for terminating the Plaintiff." Therefore, in order to resolve Henderson's claims regarding the circumstances of his discharge, the collective bargaining agreements, which contain clauses specifically relating to discharge, will have to be interpreted. Henderson is not asserting independent state law rights that do not require interpretation of the collective bargaining agreements. *Compare Lingle,* 486 U.S. at 409–10 (factual similarity between tort claim and matter covered by collective bargaining agreement not enough for tort claim to be preempted; state law remedy will be preempted only if its resolution requires interpretation of the collective bargaining agreement); *Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 115 (3d Cir.1990) (no preemption where employee "sought vindication of interests independent of those embodied in the collective bargaining agreement").

Henderson's claims are completely preempted by section 301 of the LMRA. Therefore, I will deny the motion for remand.

### III. *Motion to Dismiss, or in the alternative, for Summary Judgment*

 I will treat defendant's motion as one for summary judgment, since both parties have submitted material, which I have taken into account, that falls outside the scope of the pleadings.[3] *See* Fed.R.Civ.P. 12(b). Because Henderson's state law claims for breach of contract, breach of the covenant of good faith and fair dealing, wrongful discharge, intentional infliction of emotional distress, and detrimental reliance are preempted by § 301 of the LMRA, they must be considered as § 301 claims and analyzed by application of federal common law. An employee protected by a collective bargaining agreement may sue his employer under § 301 of the LMRA only after he has pursued his available contractual grievance and arbitration remedies and has established that his right of fair representation has been violated by the union. *See DelCostello v. Int'l Brhd. of Teamsters,* 462 U.S. 151, 163–64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Ames v. Westinghouse Elec. Corp.* 864 F.2d 289, 292 (3d Cir.1988); *Koshatka v. Philadelphia Newspapers, Inc.,* 762 F.2d 329, 334 (3d Cir. 1985).

 Merck asserts that Henderson has neither pursued his available contractual grievance remedies, nor alleged that the union broke its duty to fairly represent him. Merck points to the collective bargaining agreement in effect at the time of Henderson's discharge, which provides that if an employee is not satisfied with the resolution of his grievance, he may proceed to arbitration. Def.'s Suppl. Jur., Exh. A, at Master Agreement, Article XIII. Henderson argues that because arbitration was available, rather than mandatory, he did not have to pursue it before bringing this action.[4] However, the case law is clear that Henderson must pursue the procedures for settlement of disputes through grievance and arbitration that are made available by the collective bargaining agreement. *See, e.g., Ames,* 864 F.2d at 292. Furthermore, at no point has Henderson alleged that the union broke its duty to fairly represent him. Accordingly, there is no genuine issue of material fact as to whether Henderson has pursued all of his contractual remedies, nor as to whether Henderson has established that his

---

**3.** Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. When the moving party does not bear the burden of persuasion at trial, as is the case here, its burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.

R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.,* but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. *See Celotex,* 477 U.S. at 324; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

To determine whether summary judgment is appropriate, I must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**4.** Both parties have submitted briefs on the issue of whether Henderson may go forward with his claims assuming section 301 preemption. Henderson does not dispute that he did not pursue arbitration. Pl's Opp. to Motion to Dismiss, at 13–16. Because Henderson does not dispute his failure to pursue arbitration, I do not see that further discovery would be relevant for summary judgment.

union broke its duty to fairly represent him.[5] I will grant defendant Merck's motion for summary judgment.

## IV. *Order*

**IT IS ORDERED** that this 16th day of March, 1998, defendant Merck & Company, Inc.'s Motion to Dismiss, or, alternatively, for Summary Judgment on, plaintiff Barney Henderson's Complaint (Docket #3), is **GRANTED**, and plaintiff Henderson's Motion for Remand is **DENIED**. Judgment is entered in favor of defendant Merck.

---

**5.** Note that even if Henderson had exhausted his administrative remedies, his claims under Section 301 are barred by the applicable six month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (holding that a suit against an employer and a union, alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation is governed by a six month statute of limitations). Henderson was discharged on May 1, 1995; he commenced this action on March 31, 1997.