PRODUCERS DAIRY DELIVERY CO., INC., a California Corporation, Plaintiff-Appellee,

v.

WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, a Trust Fund, et al., Defendants-Appellants,

and

Francis I. Cohea and Ace N. Work, Jr., Applicants for Intervention and Appellants.

Nos. 79–4127, 79–4154.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted ·Dec. 11, 1980.

Decided Aug. 27, 1981.

---

**626**

Harry Finkle, Patterson & Taggart, Fresno, Cal. (argued), for Producers Dairy; William A. Quinlan, Doty, Quinlan, Kershaw & Fanucchi, Fresno, Cal., on brief.

Noble K. Gregory, San Francisco, Cal. (argued), for Western Conference of Teamsters; C. Douglas Floyd, Pillsbury, Madison & Sutro, San Francisco, Cal., on brief.

Before HUG and SCHROEDER, Circuit Judges, and GRANT,* District Judge.

HUG, Circuit Judge:

Plaintiff-Appellee Producer's Dairy Delivery Co., Inc. ("Producers") brought this action against the Western Conference of Teamsters Trust Fund ("the Trust") under section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, alleging that the Trust was retaining illegally a portion of the contributions made into the Trust by Producers on behalf of its employees. Producers sought an accounting, declaratory relief, restitution, and damages. The district court ordered that contributions made by Producers after February 7, 1972, the date on which the court determined that collective bargaining negotiations had reached an impasse, should be refunded to Producers. We reverse.

## I

## FACTS

The Trust is a pension fund established pursuant to section 302(c) of the Labor Management Relations Act, 29 U.S.C.

---

* The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

§ 186(c). The Act provides that it is unlawful for an employer to contribute money to an employee trust fund unless "the detailed basis on which such payments are to be made is specified in a written agreement with the employer ...." 29 U.S.C. § 186(c)(5)(B).

Producers entered into a collective bargaining agreement with their employees' representative, Teamsters Local 517 ("the Union"), which provided the terms under which Producers would make contributions to the Trust. This collective bargaining agreement expired on September 1, 1971; Producers and the Union had at that time already begun to negotiate in an effort to reach a new agreement. The main issues involved in the negotiations concerned the unwillingness of Producers to continue to match substantially the wages and benefits provided employees under the master agreement of the Milk and Ice Cream Employees multi-employer bargaining association, and the affect of the federal 5.5% wage and price control policy then in effect. These issues were not resolved during the bargaining process, however, and Producers continued to make contributions to the Trust during the negotiations. The Union ultimately called a strike and Producers discontinued the contributions in June, 1974.

In August, 1974 Producers's negotiator demanded a refund of all contributions made after September 1, 1971, the expiration date of the collective bargaining agreement. Producers was advised by the company which operated the Trust's administrative office that refunds could be made only if the employees on whose behalf the contributions were made released the Trust from liability. Producers then filed this action.

Following a bench trial, the district court held that all contributions made to the Trust by Producers after February 7, 1972, the date on which the court determined that collective bargaining negotiations had reached an impasse, must be refunded to Producers. The Trust raises numerous issues on appeal, including questions relating to the district court's impasse determination and the court's refusal to allow certain former employees of Producers to intervene.

## II

### DISCUSSION

The purpose of section 302's restriction on payments to employee representatives in the absence of a written agreement is to "prevent employers from tampering with the loyalty of union officials, and to prevent union officials from extorting tribute from employers." *Alvares v. Erickson*, 514 F.2d 156, 164 (9th Cir. 1975). Section 302(e) provides that the district courts shall have jurisdiction "to restrain violations of this section ...." 29 U.S.C. § 186(e).

Producers's argument that it is entitled to receive a refund of the contributions it made into the Trust is based largely on the assertion that, under the Act, it was illegal for the Trust to receive or retain contributions made in the absence of a written agreement.

It is true that payments made other than in conformity with the provisions of a written agreement are unlawful. *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106, 1109 (9th Cir. 1976). However, here the payments were made in conformity with the terms of an expired written agreement during the course of collective bargaining negotiations. It is lawful for an employer to continue the payments under these circumstances. Furthermore, it would constitute an unfair labor practice if the employer failed to continue making the contributions under those circumstances. During the negotiations following the expiration of a collective bargaining agreement, the employer is required to "maintain the status quo as to wages and working conditions." *Peerless Roofing Co., Ltd. v. NLRB*, 641 F.2d 734, 736 (9th Cir. 1981). The obligation to maintain the status quo encompasses the obligation to continue making pension fund contributions. *Id.* This obligation continues until negotiations reach an impasse. *Hinson v. NLRB*, 428 F.2d 133 (8th Cir. 1970).

As the Trust points out, were we to find that Congress created a right of action for employers to recover contributions made by them after impasse, an employer could mislead his employees by continuing to make pension contributions pursuant to an expired collective bargaining agreement, and, if negotiations prove unsuccessful, the employer could then seek the refund. The employees, in the meantime, would have been working under the assumption that their wage and benefit package was continuing intact. Further, the threat of such an action by an employer during the course of collective bargaining might severely undermine those negotiations. Certainly such a right of action would operate to the detriment of the beneficiaries of the trust, the employees and former employees, whom the statute was meant to protect.

Producers and employers similarly situated are not without a remedy in this situation. If an employer thinks that negotiations have reached an impasse, and thus that the obligation to continue making contributions has lapsed, the employer may seek injunctive relief from further demands for payment. *See Sheet Metal Contractors Ass'n. v. Sheet Metal Workers International Ass'n.*, 248 F.2d 307 (9th Cir. 1957), *cert. denied*, 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 354 (1958). In the alternative, the employer may reduce or stop payments, and raise the impasse issue as a defense should the Union then file an unfair labor practice claim. In this way the employees would not be misled into believing that they were continuing to receive their full wage and benefit package.

The judgment of the district court is REVERSED.