**AMERICAN DISTRIBUTING COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 82–7604, 82–7748.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 15, 1983.

Decided Sept. 6, 1983.

As Amended on Denial of Rehearing Nov. 7, 1983.

Michael W. O'Neil, Walnut Creek, Cal., for petitioner.

Judith Dowd, Washington, D.C., for respondent.

Before MERRILL, TANG, and NELSON, Circuit Judges.

TANG, Circuit Judge:

American Distributing Company, Inc. (the Company) seeks review of an unfair labor practice order issued by the National Labor Relations Board (the Board).[1] The Board filed a cross-application for enforcement of the order.

The Board found that the Company had violated sections 8(a)(1) and (5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), (5), by discontinuing pension trust fund contributions unilaterally upon the expiration of the collective bargaining contract between the Company and Teamsters, Chauffeurs, Warehousemen and Helpers Local 386 (the Union). The Company does not dispute that it discontinued the contributions, and we find that the Company's defenses lack merit. Accordingly, we enforce the Board's order.

FACTS

Since 1954 the Union and the Company have had a collective bargaining relationship which has included a pension plan for employees funded by employer contributions. From at least 1971, the Company has been dissatisfied with the pension trust fund contributions.

During the negotiations that produced the collective bargaining agreement in effect from May 1, 1977 to April 30, 1980, the Company stated that it would agree to continue pension contributions only for the term of that contract. At the insistence of the Company, the 1977 contract omitted a clause proposed by the Union specifying that the pension agreement could not be

---

1. The Board's Decision and Order is reported at 264 N.L.R.B. 183 (1982).

modified or terminated without the written consent of the pension fund trustees. Also at the insistence of the Company, the pension certification stated that the Company was signing under protest, and that the pension agreement was to expire on April 30, 1980.

In February and April 1980, the Company repeated its intention to discontinue established pension trust fund contributions upon the expiration of the existing collective bargaining contract. When the Company and the Union commenced formal contract negotiations on May 1, 1980, Union negotiator John Souza asked whether the Company was serious about discontinuing the pension contributions. Robert Lee, the Company representative, replied that the Company was serious about doing so. The Company in fact ceased making pension trust fund contributions as of May 1, 1980.

By letter dated December 8, 1980, the Union protested the Company's cessation of pension contributions. On December 29, 1980, the Union filed an unfair labor practice charge with the Board, alleging that the Company had violated the Act by failing to maintain established conditions of employment during negotiations for a new collective bargaining contract.

The Board, in agreement with the Administrative Law Judge (ALJ), rejected the defenses raised by the Company and found that the Company had violated sections 8(a)(1) and (5) of the Act by discontinuing the pension contributions. The Board ordered the Company to make those pension contributions that would have been made absent the Company's unlawful unilateral discontinuance. The Company was obliged to make payments until it negotiated in good faith with the Union and reached an agreement or impasse.

The Company thereafter filed a petition for review and the Board filed a cross-application for enforcement.

ANALYSIS

I

Violation of Sections 8(a)(1) and (5)

An employer may not unilaterally institute changes in established terms and conditions of employment that constitute mandatory subjects of bargaining. 29 U.S.C. § 158(a)(5), (d); *see Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 209–10, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964). The prohibition against unilateral changes extends past the expiration of a collective bargaining agreement until the parties negotiate a new agreement or bargain in good faith to impasse. *NLRB v. Carilli,* 648 F.2d 1206, 1214 (9th Cir.1981). Because contributions to an employee pension trust fund constitute a mandatory bargaining subject, an employer may not make unilateral changes in pension fund contributions. *Id.* at 1213–14. An employer who does make such unilateral changes has committed an unfair labor practice in violation of sections 8(a)(1) and (5) of the Act.

The Company does not dispute that it discontinued the pension trust fund contributions upon the expiration of the 1977–80 contract. Instead, the Company claims that: (1) the Union waived its right to object by contract and by inaction; (2) under section 302 of the Labor Management Relations Act (LMRA), the pension trust fund could not legally accept and the Company could not legally make further contributions; and (3) the charge is time barred by section 10(b) of the Act, 29 U.S.C. § 160(b).

The Board concurred with the ALJ's decision to reject these defenses. We enforce the Board's order if the Board correctly applied the law and if the Board's findings of fact are supported by substantial evidence in the record viewed as a whole, even if we might have reached a different conclusion based on the same evidence. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Nevis Industries,* 647 F.2d 905, 908 (9th Cir.1981).

A. The Waiver Defenses

1. Contractual Waiver

In collective bargaining, a union may waive a right that is protected by the

Act. *NLRB v. C & C Plywood Corp.*, 385 U.S. 421, 430–31, 87 S.Ct. 559, 565, 17 L.Ed.2d 486 (1967). A waiver must generally be clear and unmistakable. *NLRB v. Southern California Edison Co.*, 646 F.2d 1352, 1364 (9th Cir.1981). Waivers occur by express contractual provisions, by bargaining history, or by a combination of the two. *Chesapeake & Potomac Telephone Co. v. NLRB*, 687 F.2d 633, 636 (2d Cir.1982). The bargaining history establishes relinquishment of a mandatory bargaining subject only if past negotiations reveal that the subject was "fully discussed or consciously explored" and the Union "consciously yielded" its interest in the matter. *Tocco Division of Park-Ohio Industries, Inc. v. NLRB*, 702 F.2d 624, 628 (6th Cir.1983) (quoting *C & C Plywood Corp.*, 148 N.L.R.B. 414, 416 (1965), *enforcement denied*, 351 F.2d 224 (9th Cir.1965), *rev'd*, 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967)).

We reject the Company's contention that the 1977 collective bargaining agreement and the pension trust certification constituted a contractual waiver of the statutory right to bargain over pension plan changes. The Company argues that the combination of three factors showed an unequivocal waiver: (1) the pension certification was amended to state that it would expire when the collective bargaining agreement terminated; (2) the Company successfully insisted upon excising a contractual provision that required pension trust approval before stopping pension contributions; and (3) the Company clearly stated to the Union that it would cease making pension fund contributions when the 1977 agreement expired.

■ We need not decide the unique question whether a contractual waiver of a mandatory bargaining subject may ever survive the termination of a contract. The Board concluded that the evidence was insufficient to show an unequivocal waiver. We give deference to this conclusion because alleged contractual waiver of a protected right is a question that falls within the area of the Board's special expertise. *NLRB v. Southern California Edison Co.*, 646 F.2d at 1367. Furthermore, substantial

evidence supports the factual findings on which the Board based its conclusion that the Union had not waived the right to bargain on pension contributions when the 1977 agreement expired.

■ The Union's abandonment and foregoing of the contractual provision is insufficient to constitute a waiver of its statutory right to bargain. *See id.* at 1366. Also any inferences that may be drawn from the parties' bargaining history and the amendment of the pension certification are insufficient to overcome the deference we owe to the Board's findings. *Id.* at 1366–67; *see also NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 304 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979) (great deference given to the inferences drawn by the Board from testimony credited by the ALJ). We uphold the Board's finding that an unequivocal contractual waiver did not occur.

2. Waiver by Union Inaction

In addition to the contractual waiver defense, the Company contends that the Union waived its statutory right to bargain during the 1980 discussions by failing to object or seek bargaining over the Company's announced intention to discontinue the established pension contributions.

■ To assert successfully a waiver-by-inaction defense, an employer must show that the union had clear notice of the employer's intent to institute the change sufficiently in advance of actual implementation so as to allow a reasonable opportunity to bargain about the change. *See NLRB v. Crystal Springs Shirt Corp.*, 637 F.2d 399, 402 (5th Cir.1981); *International Ladies' Garment Workers Union v. NLRB*, 463 F.2d 907, 918–19 (D.C.Cir.1972). Moreover, the employer must demonstrate that the union failed to make a timely bargaining request before the change was implemented. *Id.* Conjecture, rumor or gossip does not constitute clear notice. *See NLRB v. National Car Rental Systems, Inc.*, 672 F.2d 1182, 1188 (3d Cir.1982); *NLRB v. Rapid Bindery, Inc.*, 293 F.2d 170, 176 (2d Cir.1961).

As early as 1977, the Company informed the Union that its pension contributions would cease in 1980. The Company's negotiators also informed the Union on three occasions in 1980 that the Company planned to discontinue contributions at the termination of the 1977–80 contract.[2] The ALJ determined, however, that the Company's "loose verbalisms" did not constitute clear notice to the Union, and the Board asserts that the Company's statements were merely expressions of dissatisfaction made during informal meetings between the Union and Company negotiators.[3]

■ This result is consistent with our recent decision in *Stone Boat Yard v. NLRB*, 715 F.2d 441 (9th Cir.1983), in which we held that an employer must give express notice of specific proposals before implementing unilateral changes. *Id.* at 444. We noted that an express notice requirement facilitates open discussions by informing the unions of what might be lost if they fail to object or seek bargaining. *Id.* Here, the Company's statements of dissatisfaction failed to put the Union on notice that, contrary to past practices, the Company would withhold pension contributions during the period between contracts.

Substantial evidence supports the Board's determination. Company negotiators had protested the established contributions during every round of contract negotiations since 1971. Yet the Company had never before discontinued contributions. In 1977, during a four-month period in which no contract existed, the Company had continued the established contributions. In light of this bargaining history, the ALJ and the Board could properly conclude that the company had not provided clear notice to the Union.

### B. The Section 302 Defense

■ Under section 302 of the LMRA, an employer may make payments to a pension fund and the trust may accept them only if "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). Section 302 was enacted to ensure that employee benefit trust funds are used for the sole benefit of the employees of the companies that make the contributions. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 331, 101 S.Ct. 2789, 2795, 69 L.Ed.2d 672 (1981).

■ The Company contends that letters from the pension trust fund clearly establish that the trust could not and would not accept or retain Company contributions beyond April 1980. The Company incorrectly concluded that it was entitled, or even required, under section 302 not to make further pension contributions. The Union, of course, was not bound by the letters sent by the pension trust. *See id.* at 330–34, 101 S.Ct. at 2794–96 (the trustees of a pension trust fund are independent and distinct from both the employers and the unions participating in the fund).

The Board properly found that the Company had an obligation to continue the pension contributions absent a bargaining impasse or a waiver from the Union. Because

---

2. In February 1980, Sommerfeld, the Company negotiator, told Souza, the Union negotiator, that the Company would stop making pension contributions at the expiration of the 1977–80 contract unless they had already reached a new agreement that would obligate them to continue the contributions. In April 1980, the Company negotiator told Souza that "we were going to discontinue the pension contributions at the expiration of the contract . . . ." Again, on May 1, 1980, at the first formal negotiation session, the Company negotiator responded to Souza's question whether the Company was serious about discontinuing pension contributions by stating: "Yes we were. As far as we were concerned it was like throwing it out the window." We need not decide whether these assertions constitute adequate prior notice.

Moreover, even if the Company's contention is true, that Souza had notice of the nonpayment in July, such notice does not support the Company's waiver defense. Only clear notice conveyed sufficiently in advance of the implementation of the change to allow reasonable scope for bargaining would have been sufficient to support a waiver defense. *See NLRB v. Crystal Springs Shirt Corp.*, 637 F.2d 399, 402 (5th Cir.1981) (notice given after a change in established terms of employment cannot support a waiver defense).

3. Even if the Company's contention is true, that Souza had notice of the nonpayment in July, such notice does not support the company's waiver defense. Only clear notice conveyed sufficiently in advance of the implementation of the change to allow reasonable scope for bargaining would have been sufficient to support a waiver defense. *See NLRB v. Crystal Springs Shirt Corp.*, 637 F.2d 399, 402 (5th Cir.1981) (notice given after a change in established terms of employment cannot support a waiver defense).

a written agreement—the expired contract—specified the basis on which the Company was legally obligated to make contributions, the literal language and underlying purpose of section 302 has been satisfied. *See Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Trust Fund,* 654 F.2d 625, 627 (9th Cir.1981); *Peerless Roofing Co. v. NLRB,* 641 F.2d 734, 736 (9th Cir.1981).

The Company asserts that this case is distinguishable from *Producers* and *Peerless* because here both the collective bargaining agreement and the pension trust certification have expired. In *Peerless,* the trust fund agreement was still valid. 641 F.2d at 736. Nonetheless, the unequivocal language of *Producers* states that an employer is required to maintain the status quo and make payments in conformity with the terms of an expired written agreement. 654 F.2d at 627. Accordingly, we hold that the Company's section 302 defense fails.

### C. The Section 10(b) Defense

█ Section 10(b) of the Act establishes a six-month statute of limitations for the filing of an unfair labor practice charge. 29 U.S.C. § 160(b). The limitation period does not begin to run until the party filing the charge receives actual notice that an unfair labor practice has occurred. *Peerless Roofing,* 641 F.2d at 736.

█ The ALJ credited Souza's testimony that on November 24, 1980, he learned for the first time that the Company had not made pension contributions since May. The ALJ concluded that the charge was timely filed on December 29, 1980. The Company, however, contends that the Union received sufficient notice as early as February 1980.

Because notice of the intention to commit an unfair labor practice does not trigger section 10(b), *see NLRB v. R.O. Pyle Roofing Co.,* 560 F.2d 1370, 1372 (9th Cir.1977), only notice received after the Company missed its first pension fund payment could have provided actual notice to the Union. Consequently, the relevant time period is May and June 1980. Even if Souza became aware of the nonpayments in July, as the Company contends, the charge was filed within six-months thereafter and is timely.

The only statement within the relevant period was made on May 1, 1980. The Board had substantial evidence before it from which to conclude that this statement did not constitute actual notice. We defer

to the reasonable inferences drawn by the Board from the testimony credited by the ALJ. *NLRB v. Tahoe Nugget, Inc.,* 584 F.2d at 304.

### II

### Due Process Considerations

█ The Company asserts that the Board violated due process by issuing an open-ended remedial order that requires the Company to make pension contributions until the Company negotiates in good faith with the Union reaching a new contract or impasse. The parties litigated this case with the understanding that any Company liability would cover only the period from April 30, 1980—when the Company ceased making pension contributions—until December 21, 1980, the date set by the pension trust fund on which it would refuse to accept further contributions without a new written agreement.

The Company correctly states that the Board violates procedural due process and fundamental fairness when it finds violations of the Act neither charged in a complaint nor litigated. *See Boyle's Famous Corned Beef Co. v. NLRB,* 400 F.2d 154, 162–64 (8th Cir.1968). We do not decide whether a finding that the company's liability extends beyond December 21, 1980 would impinge upon principles of due process or fundamental fairness because no such findings have been made.

The Board has not yet ruled on the proper scope of the remedial period. The Board's order requires the Company to pay only those contributions "which would have been [paid] absent [the Company's] unlawful unilateral discontinuance of such payments." The Board concedes that this order contemplates that the Company is relieved of any obligation to make contributions which it can show would not have been accepted by the trust fund.

The Board has the discretion to compute the amount of an award and to make factual determinations affecting the amount of the award at a compliance hearing following enforcement of its order. *E.g., NLRB v. International Association of Bridge, Structural & Ornamental Iron Workers,* 600 F.2d 770, 778–79 (9th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). Because this has not yet occurred, it is premature for us to conclude that the Board's award includes payments beyond December 21, 1980. Therefore, the Compa-

ny's due process and fundamental fairness contentions are not ripe for consideration.

CONCLUSION

- The Board's finding that the Company committed an unfair labor practice is supported by substantial evidence. Review of the remedial order is premature.

The order is enforced; the petition for review is denied.