991 F.2d 803
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
Hospital & Health Care Workers' Union, Local 250, Service
Employees Int'l Union, Affiliated with Service
Employees Int'l Union, AFL-CIO, Intervenor,
v.
DAVIES MEDICAL CENTER, Respondent.
 No. 91-70604.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 12, 1993.*
Decided April 15, 1993.
 
 Before NORRIS, HALL and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The NLRB petitions for enforcement of its order finding that respondent, Davies Medical Center (the "Hospital"), violated §§ 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1) and (5), by coercively interrogating employees about their activities in the Union, by soliciting employees to sign a petition to decertify the Union, by refusing to furnish requested information to the Union, and by withdrawing recognition from the Union as the exclusive bargaining representative of the employees. We grant enforcement of the order.
 
 
 3
 * We will enforce an order of the NLRB if substantial evidence supports its findings of fact and if it has correctly applied the law. NLRB v. O'Neill, 965 F.2d 1522, 1526 (9th Cir.1992). Substantial evidence means "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir.1987). The credibility resolutions of an administrative law judge, affirmed by the Board, are entitled to "great deference" and acceptance on review unless they are "inherently incredible or patently unreasonable." Photo-Sonics, Inc. v. NLRB, 678 F.2d 121, 123 (9th Cir.1982).
 
 II
 
 4
 The NLRB's findings that the Hospital engaged in coercive interrogation of employee Carl Evans and employee Richard Dorn are both supported by substantial evidence. An employer violates § 8(a)(1) by coercively interrogating employees about their union activities or attitudes toward the union. Hotel Employees & Restaurant Emp. Union, Local 11 v. NLRB, 760 F.2d 1006, 1007-09 (9th Cir.1985). The test for evaluating the legality of an interrogation is whether, assessing the totality of the circumstances, the questioning reasonably tends to restrain, coerce or interfere with employees' exercise of statutorily protected rights. Id. at 1008-09.
 
 
 5
 With respect to Carl Evans, the evidence shows that, soon after a decertification petition began circulating, Greg Monardo, the Hospital's president, approached Evans and asked him, "Are you still a member of [the Union]?" Evans replied that he was, and Monardo said, "Okay, I was just wondering." This was the first time Monardo ever spoke to Evans about the Union. Several weeks later, George Monardo, the Hospital's chief executive officer, approached Evans and asked whether he was still a member of the Union. George then asked Evans, "Do you pay $19 [in dues]?" When Evans replied that he did, George said, "I was just wondering. You could do something else with your $19." This was also the first time George ever spoke to Evans about the Union.
 
 
 6
 The Hospital argues that the administrative law judge ("ALJ") erred in believing Evans' testimony because the Monardos testified that they never asked Evans about his union membership. This contention has no merit. The ALJ weighed the credibility of the witnesses and found Evans "more convincing than either of the Monardos." The Hospital also tries to undermine Evans' credibility by pointing to minor discrepancies in his testimony. This, too, has no merit. The ALJ noted in his opinion that these discrepancies were insignificant, and concluded that Evans had "testified without guise or guile." Finally, the Hospital argues that the Monardos' questioning of Evans was conducted in a "friendly, off-handed manner" and was not threatening. Nevertheless, the NLRB disagreed, and the Hospital provides no basis for disturbing this finding.
 
 
 7
 With respect to Richard Dorn, the evidence shows that Greg Monardo summoned Dorn to the president's office and said, "I heard that there were cards going around from the Union." When Dorn admitted this activity, Monardo asked him how many cards had been signed. Dorn said that he didn't know. Monardo then requested that cards not be circulated during "hospital time."
 
 
 8
 The Hospital argues that Monardo questioned Dorn because of his concern that the distribution of cards on working time violated the Hospital's valid "no-solicitation" rule. But the NLRB expressly rejected this argument, noting that Monardo's concern for the enforcement of the no-solicitation rule did not require the "particularly intrusive question about how many union cards had been signed." Moreover, the NLRB found this explanation lacking in credibility since the Hospital was at the same time permitting the solicitation of employee signatures on an anti-union petition during working time. The NLRB concluded that "it would reasonably appear to Dorn that the [Hospital's] president sought to discover whether the Union was having any success in a last minute effort to counteract the unlawful decertification campaign and that Monardo further sought to chill the pro-union effort." This finding is supported by substantial evidence.
 
 III
 
 9
 The NLRB's finding that two hospital supervisors (Ethel Hendy and Bob Bailey) were working in conjunction with two employees (Elizabeth Santos and Betty Lerias) to promote decertification of the Union is also supported by substantial evidence.
 
 
 10
 An employer's actions violate § 8(a)(1) if they have a reasonable tendency to coerce employees in the exercise of their right to form and maintain a union, regardless of whether employees are actually coerced. NLRB v. Brooks Camera, Inc., 691 F.2d 912, 919 (9th Cir.1982). An employer may not "promote a decertification proceeding or induce employees to sign any form of union-repudiating document...." NLRB v. Triumph Curing Center, 571 F.2d 462, 470 (9th Cir.1978) (citation omitted).
 
 
 11
 The evidence shows that supervisor Ethel Hendy escorted Evelia Tijerino, an employee whom she supervised, to meet supervisor Bailey during work time and then to talk to fellow employee Santos. Santos, in Hendy's and Bailey's presence, told Tijerino that "[t]hey want me to talk to you about a union." Hendy and Bailey then stated that they could leave because Santos was going to talk to Tijerino about the Union. Once they were gone, Santos told Tijerino that Local 250 did nothing for her, urged her to sign the decertification petition, and concluded by telling her "they just want me to tell you this."
 
 
 12
 On another occasion, Hendy took Tijerino to see employee Lerias, and Lerias again urged Tijerino to sign the decertification petition. When Tijerino returned to her work, Hendy asked whether she had spoken with Lerias. In addition, Hendy directly discussed the effort to reject the Union with Felix Ramirez, another employee she supervised, and then escorted him to Lerias' office in order to let Lerias solicit Ramirez' signature on the decertification petition.
 
 
 13
 The NLRB found that "[t]he nature of the incidents requires a conclusion that [the Hospital's] supervisors Bailey and Hendy were actively involved in persuading employees to support the decertification effort and assisted in the solicitations of employees' signatures on the petition." The NLRB also found that employees Santos and Lerias were agents of the Hospital within the meaning of § 2(13) of the Act, and that the Hospital was thus responsible for their actions. As the NLRB stated, the Hospital, "through Hendy and Bailey, placed Tijerino and Ramirez in the position where they, as rank-and-file employees, could reasonably believe Santos and Lerias spoke on behalf of management, and that Santos and Lerias were vested with apparent authority to act as the [Hospital's] agents."
 
 
 14
 The Hospital argues that Hendy was not involved in the coercion because she did not talk directly to Tijerino about the decertification petition. We disagree. Hendy, Tijerino's direct supervisor, directed her on two occasions during work time to contact employees who in turn solicited support for the decertification petition. This could reasonably have been understood as an official work-related request. Hendy never tried to assure Tijerino that Santos and Lerias were just coworkers without any authority, nor did she protest when Santos said, in Hendy's and Bailey's presence, that "they want me to talk to you about a union."
 
 
 15
 The Hospital also argues that Lerias was acting independently of supervision. Their only evidence to support this contention, however, is Lerias' own testimony, which was expressly discredited by the ALJ. The ALJ stated that Lerias "appeared to hesitate when she seemed to perceive [that] her response to a question [might] have an adverse effect on [the Hospital], and "did not appear to be giving full responses to all questions...." The ALJ found that "Lerias [was] not a credible witness," and accepted the testimony of Tijerino and Ramirez because they "testified in an open manner, ... appeared plausible and convincing, ... [and] gave their evidence in a straightforward manner without any indication of dissembling."
 
 
 16
 Finally, the Hospital argues that the NLRB erred in finding Lerias and Santos to be agents of the Hospital because there is no evidence that they were given instructions by Hospital management to promote anti-union activities. This argument is unpersuasive. Under agency law, the question of apparent authority is whether the principal engages in, or condones, conduct which is reasonably likely to create the belief that the employees were authorized to act on behalf of the principal. The NLRB reasonably concluded that, in the eyes of Tijerino and Ramirez, Hendy's and Bailey's actions conferred apparent authority on employees Santos and Lerias.
 
 IV
 
 17
 Finally, the NLRB's findings that the Hospital violated § 8(a)(5) and (1) by refusing to furnish presumptively relevant information in response to the Union's requests, and by withdrawing recognition from the Union, are also supported by substantial evidence.
 
 
 18
 An employer's statutory duty to bargain in good faith under § 8(a)(5) includes the duty "to provide information that is needed by the bargaining representative for the proper performance of its duties." NLRB v. Acme Industrial Co., 385 U.S. 432, 435-36 (1967). The employer's duty includes an obligation to make a "reasonably diligent" effort to provide the requested information in a timely manner. John S. Swift Co., 124 NLRB 394 (1959), enforced in part and denied in part, 277 F.2d 641 (7th Cir.1960).
 
 
 19
 In January 1989, the Union sent a letter to reopen negotiations with the Hospital on the contract and requested an extensive range of information. The letter stated, in relevant part: "In preparation for the negotiation, the Union is desirous of certain information from you.... In this regard, the Union requests at the time of the first meeting the information set forth on the attached pages." (There is no dispute as to the relevancy of the information.) The letter closed by stating that the Hospital "may deal directly with representatives of [the Union] with respect to the presentation of this information at a mutually convenient time and place."
 
 
 20
 The Hospital did not respond to the information request for several months. On April 4, a group of employees presented the Hospital with a decertification petition, purportedly containing the signatures of a majority of the bargaining unit employees (63 of 119). On April 5, the Hospital wrote a letter to the Union, notifying it of the petition and stating that it would no longer recognize the Union. The Union then sent several letters reiterating its request for information. One of these letters stated in part, "Some time ago a letter reopening the contract was sent to you which included a request for information. [The Union is] still awaiting your response so that negotiations can commence." Another letter from the Union's negotiator stated, "I am again demanding the [Hospital] provide me with the requested information for bargaining and that the [Hospital] agree to dates to negotiate a new agreement." These requests were denied.
 
 
 21
 Although the Hospital concedes that it would usually be required to provide the requested information to an incumbent collective bargaining representative, it argues that the Union was not entitled to the information here because: (1) the Union had waived its right to receive the information prior to the first negotiating session; and (2) as a result of the decertification petition, the Union was no longer the statutorily authorized bargaining representative. Both arguments fail.
 
 
 22
 Granted, the initial Union letter did request the information "at the time of the first meeting," but subsequent letters made clear that the Union wanted the information prior to the first negotiation. To constitute a waiver of statutory rights, the waiver must be expressed in a clear and unmistakable fashion. Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708 (1983). The NLRB did not err in finding the absence of waiver on these facts. See American Distributing Co., Inc. v. NLRB, 715 F.2d 446, 450 (9th Cir.1983) (the question of whether a party has waived a statutory right is a matter committed to the Board's specialized expertise).
 
 
 23
 Second, the Hospital's withdrawal of recognition from the Union is no excuse for the Hospital's failure to provide information, because this withdrawal was based on a decertification petition tainted by the Hospital's unlawful conduct. An employer may not withdraw recognition from an incumbent union unless it has knowledge that the union has in fact lost its majority status, or if objective considerations provide the employer with a good faith doubt of the union's majority. NLRB v. Curtin Matheson Scientific, Inc., 110 S.Ct. 1542, 1549-50 (1990). However, an employer's doubt about a union's majority status is not valid when it is "raised in the context of employer activity aimed at causing disaffection from the union." NLRB v. Sky Wolf Sales, 470 F.2d 827, 830 (9th Cir.1972).
 
 
 24
 The NLRB found that the Hospital's withdrawal of recognition was fatally tainted by its coercive activities in support of the decertification petition. The NLRB stated that, "[the Hospital's] actions in these circumstances were sufficient to taint the entire solicitation of signatures on the anti-union petition." The NLRB did not err in concluding that the Hospital could not rely on the tainted petition as grounds for withdrawing recognition from the Union.
 
 
 25
 Enforcement is GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3