996 F.2d 1553
 143 L.R.R.M. (BNA) 2697, 62 USLW 2042,
125 Lab.Cas. P 10,748
 RESORTS INTERNATIONAL HOTEL CASINO, Petitioner in No.
92-3557, Respondent in No. 92-3625,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent in No. 92-3557,
Petitioner in No. 92-3625,
and
Local 54 of the Hotel Employees and Restaurant Employees
International, AFL-CIO, Intervenor-Respondent/Petitioner.
 Nos. 92-3557 and 92-3625.
 United States Court of Appeals,
Third Circuit.
 Argued May 4, 1993.
Decided July 1, 1993.
 
 Howard R. Flaxman, (argued), Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Resorts Intern. Hotel Casino.
 Paul J. Spielberg, Deputy Asst. Atty. Counsel, David Seid, Atty., John D. Burgoyne (argued), Jerry M. Hunter, Gen. Counsel, Yvonne T. Dixon, Acting Deputy Gen. Counsel, Nicholas E. Karatinos, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, National Relations Bd., Washington DC, for NLRB.
 James Katz (argued), Tomar, Simonoff, Adourian & O'Brien, Haddonfield, NJ, for Local 54.
 Before: COWEN, ROTH, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 The narrow question presented by this appeal is whether an employer must disclose the identity of a complaining customer to a union when a union member is subjected to disciplinary proceedings based on the customer's complaint. The employer in this case, Resorts International Hotel Casino (Resorts), received separate verbal complaints from two of its customers regarding the job performance of two of its cocktail servers (the servers). Resorts suspended the two employees pending investigations. The suspended employees each filed grievances that were denied, and the employees were discharged.
 
 
 2
 At the grievance meetings held according to contract procedure, Local 54 of the Hotel Employees and Restaurant Employees International, AFL-CIO (Union), requested that the employer furnish the names, addresses, and telephone numbers of the complaining customers. The Union stressed that it required this information to investigate the merits of the grievances and determine whether they should be taken to arbitration. Resorts refused to provide the requested information. Consequently, the Union filed an unfair labor practice charge against Resorts for failure to disclose relevant information. The National Labor Relations Board (NLRB or Board), respondent, thereafter issued a complaint asserting violations of subsections 8(a)(5) and (1) of the National Labor Relations Act (NLRA or Act). 29 U.S.C. § 158(a)(1), (5) (1988).
 
 
 3
 After a hearing, the Administrative Law Judge (ALJ) decided that the Union was statutorily entitled to the requested information and that it had not waived its right to receive it. Therefore, the ALJ held that Resorts violated the NLRA by refusing to disclose the relevant information.
 
 
 4
 Resorts filed timely exceptions to the ALJ's decision. The Board, however, adopted the ALJ's Decision and Order in all respects. Resorts petitioned this court for review, and the NLRB cross-petitioned for enforcement of the Decision and Order. This court granted the Union's motion to intervene.[1] The petition for review will be denied; the cross-petition for enforcement will be granted.
 
 I. FACTS
 
 5
 Resorts is a corporation engaged in the operation of a casino hotel in Atlantic City, New Jersey. Resorts and the Union were parties to a collective bargaining agreement effective at all times pertinent to this matter.
 
 
 6
 In March 1991, two patrons complained separately to Resorts personnel regarding two Resorts cocktail servers, both of whom were members of the Union. A Resorts supervisor prepared a written summary of each of the complaints. At no time did the complaining guests request that their identities remain confidential, and Resorts did not tender assurances of anonymity to them.
 
 
 7
 The collective bargaining agreement affords Resorts "the unquestionable right to immediately suspend and/or discharge any employee for ... overt discourteous conduct towards a guest or patron." In preparing for the grievance hearings, the Union requested identity information of the complaining guests. Resorts denied the requests and instead furnished the Union with the supervisor's written summaries of the complaints with the names of the guests deleted.
 
 
 8
 In refusing to divulge the requested information, Resorts, in letters written to the Union by its director of employee relations, stated:
 
 
 9
 If you proceed to arbitration, you will have an opportunity at that hearing to cross-examine the guest. The refusal to release the information should not be construed as a refusal to bargain but rather to protect the privacy of our guest.
 
 
 10
 Again, this statement was relied on at the grievance hearing and should you have any specific questions, I will be more than willing to contact the guest. At that same time, if the guest authorizes release of his name, I will then have no further objections.
 
 
 11
 The director also stated that she would be willing to allow the Union to participate in conference calls with the complaining guests, so long as the guests' identities remained confidential. The Union did not avail itself of these offers of accommodation. Resorts ultimately reinstated the servers, and the grievances never proceeded to the arbitration stage.
 
 II. DISCUSSION
 A. The Employer's Claim of Confidentiality
 
 12
 On review, the Board's findings of fact must be not be disturbed if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e), (f); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); Systems Management, Inc. v. NLRB, 901 F.2d 297, 300 (3d Cir.1990). Questions of law are also generally subject to plenary review. Tubari, Ltd. v. NLRB, 959 F.2d 451, 453 (3d Cir.1992). However, when the issue involves a question of the Board's construction of its own statutes in the NLRA, the court must follow the intent of Congress when it has spoken directly on the issue, but must defer to the Board's permissible construction of its own statute in the face of congressional silence. NLRB v. New Jersey Bell Tel. Co., 936 F.2d 144, 146-47 (3d Cir.1991) (citing inter alia, Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).
 
 
 13
 An employer commits an unfair labor practice under subsections 8(a)(5) and (1) of the NLRA when it "refuse[s] to bargain collectively with the representatives of [its] employees...." 29 U.S.C. § 158(a)(5). The Union's right to information is not absolute. New Jersey Bell Tel. Co. v. NLRB, 720 F.2d 789, 790-91 (3d Cir.1983). It is well-settled, however, that "the duty to bargain collectively ... includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative," and that one of the duties of a labor union is the processing of grievances. Detroit Edison Co. v. NLRB, 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979).
 
 
 14
 Resorts does not dispute that the witness identity information is relevant to the Union's processing of the grievances in this case. Resorts contends, however, that its unwillingness to provide the identity of the complaining patrons stems from its consistent practice of protecting the important and legitimate confidentiality interests of its guests who register service complaints. "[I]n dealing with union requests for relevant, but assertedly confidential information, the Board is required to balance a union's need for the information against any 'legitimate and substantial' confidentiality interests established by the employer." Pennsylvania Power & Light Co., 301 NLRB 1104, 1105 (1991); accord Detroit Edison, 440 U.S. at 315, 318-20, 99 S.Ct. at 1132-34.
 
 
 15
 Before such a balancing takes place, the party seeking to withhold relevant information on the basis of confidentiality bears the burden of demonstrating a legitimate claim of confidentiality. See, e.g., Mary Thompson Hosp. v. NLRB, 943 F.2d 741, 747 (7th Cir.1991); Pennsylvania Power, 301 NLRB at 1105. Moreover, the confidentiality interest of the employer, its employee, or its customer is not fixed; it may vary with the nature of the industry or the circumstances of a particular case. For example, the degree of confidentiality and the necessity therefor in the nuclear public utility industry, where the safety of employees and the public is involved, may differ from that in the casino gambling industry.
 
 
 16
 In the case sub judice, the Board found that Resorts failed to establish a legitimate and substantial confidentiality interest that outweighed the Union's right to admittedly relevant information by comparing the present case to Fairmont Hotel Co., 304 NLRB 746 (1991). In Fairmont Hotel, the hotel received a guest complaint regarding the conduct of a room cleaner, who was a member of the union bargaining unit. As in the present case, the guest complained without ever requesting, or receiving an offer of, anonymity. Nonetheless, the hotel refused to disclose the identity of the complaining guest to the union, asserting that the hotel "does everything possible to ensure the privacy of its guests [and] that it does not give out any information to any persons about the guests" absent a court subpoena, and it "understand[s] that the guest comes into the hotel expect[ing] privacy 100 percent." Fairmont Hotel, 304 N.L.R.B. at 717.
 
 
 17
 The ALJ, whose opinion was adopted by the Board, did not accept the hotel's argument, finding the hotel had violated the NRLA by failing to provide relevant information without demonstrating a legitimate confidentiality claim:
 
 
 18
 This information plainly "would be of use to" the Union in investigating [the disciplined employee's] alleged misconduct, and thus in deciding whether and to what extent to grieve her suspension; and [the employer] has failed to persuade me that its avowed reasons for withholding the guest's identity warrant exemption from the general rule.... The record contains no evidence ... that the guest requested or was promised anonymity; and one might surmise from the guest's having complained without such a request or assurance, and from [the employer's] stated intent all along to call the guest as a witness in the arbitration proceeding, that tactics rather than privacy was the primary consideration.
 
 
 19
 Id. at 748 (emphasis added). Resorts argues that its guests have a significant interest in their privacy, which it seeks to protect. Casinos are highly competitive, and they expend great sums of money to attract patrons. Resorts further emphasizes its customer service and the potential adverse impact on its financial returns of the loss of dissatisfied patrons due to violations of their privacy expectations. Resorts asserts that casino patrons, unlike those who stay in ordinary hotels, expect confidentiality because many segments of society stigmatize those who gamble. Although gambling is legal, many play games of chance without the knowledge of family, friends, and the community at large. Therefore, argues Resorts, these customers would find unwelcome the disclosure of a gambling excursion, and it must thus keep the witness identity information private. We recognize the elements of realism in Resort's argument, but the contention is overly broad in the face of the record in this case.
 
 
 20
 The Board's position is that, to establish a legitimate confidentiality claim, Resorts must demonstrate either that the guest requested, or the hotel promised, that the witness identity information would remain confidential. See id. (the ALJ held that there was no confidentiality claim because "[t]he record contains no evidence ... that the guest requested or was promised anonymity."). However, Resorts attempts to distinguish this case, involving a gambling casino hotel, from Fairmont Hotel, which involves a regular commercial hotel. Resorts relies in part upon the following statement of dicta, mentioned by the Board in a footnote in Fairmont Hotel:
 
 
 21
 [W]e note that the [employer] failed to establish that it promised anonymity to the complaining guest at any time or that she had any reasonable expectation of privacy.
 
 
 22
 Id. at 746 (emphasis added).
 
 
 23
 In this case, the Board has interpreted its holding in Fairmont Hotel to mean that, assuming the existence of a guest's expectation of privacy, it will deem that expectation reasonable only when supported by an offer of, or request for, anonymity. As set forth supra, when the issue involves a question of the Board's construction of the NLRA, this court must defer to the Board's construction of its own statute as long as that construction is permissible. New Jersey Bell, 936 F.2d at 146-47 (citing Chevron, 467 U.S. 837, 104 S.Ct. 2778).
 
 
 24
 We conclude that the Board's construction of the NLRA in this case is permissible. Although it is highly probable that many casino patrons prefer to gamble in anonymity, it is also likely that a substantial number are indifferent. Additionally, it is true that some people visit regular commercial hotels for illicit and covert purposes about which their friends, family, and community have no knowledge. Others proudly boast that they frequent both casinos and various commercial hotels. We cannot look into a person's mind, however; we must therefore gauge a patron's desire for anonymity by an overt manifestation. We presume that those patrons who are concerned about their privacy will not voluntarily become involved in the disciplinary proceedings of an hotel employee without first requesting anonymity. Conversely, we presume that a hotel which fails to tender assurances of confidentiality to a complaining guest has no reasonable, business-related expectation of confidentiality in such a guest's identity information.
 
 
 25
 We will therefore defer to the Board's interpretation of the NLRA in this case, as it is a permissible construction of the statute. Thus, the Board did not err in holding that, in order to demonstrate a legitimate confidentiality interest, Resorts must show either that it promised the complaining guests anonymity or that the guests had a reasonable expectation of confidentiality stemming from their request for anonymity.
 
 
 26
 In the present case, it is undisputed that the complaining guests never requested anonymity and that the supervisor who recorded the complaints never promised the guests that their identities would remain confidential. Moreover, there are no statements in any of Resorts' advertisements or promotions that assure anonymity to patrons. In sum, the fact that the patrons registered their complaints without first seeking any guarantee of confidentiality undermines Resorts' assertion that the patrons had a reasonable expectation of privacy. Fairmont Hotel, 304 NLRB at 748. Further, that Resorts processed those complaints without tendering assurances of confidentiality to the complaining guests undermines its assertion that it somehow must protect the guests' expectations of privacy for business-related reasons.
 
 
 27
 If this court were to accept the proposition that casino patrons have an augmented expectation of privacy, all future cases involving this issue would require a burdensome, subjective inquiry into the privacy expectations of the customers of the gambling industry. In contrast, our rejection of Resorts' premise leads to a clear, bright line rule in all cases, regardless of the industry involved: If an employer desires to provide its customers with anonymity, then anonymity must be a component of its transactions. If a guest desires anonymity, he or she must at least request it. This allows all parties to rely on a clear rule and to adjust their behavior accordingly. Although the rule may not produce the perfect result in all cases, "the best should not be the enemy of the good. [We should not allow] the infeasible perfect to oust the feasible good." Pennsylvania v. ICC, 535 F.2d 91, 96 (D.C.Cir.), cert. denied, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976).
 
 
 28
 Finally, Resorts' argument leads to anomalous results. Carried to its logical end, Resorts would have this court pronounce that the least socially acceptable activities produce the greatest confidentiality protections. Those who patronize "houses of ill repute" in a state where prostitution is regulated would have an inherent privacy interest far greater than that of the regular hotel patron. This court will not promote such an anomaly.
 
 
 29
 In the future, those industries that value customer identity confidentiality and their patrons will have a bright line rule to apply: They must promise or request confidentiality in the course of their transactions or at the time a complaint is lodged. If this rule is followed, the employer will easily distinguish its case from Fairmont Hotel and thus demonstrate some legitimate confidentiality interest.[2] At that point, the parties would negotiate for accommodations such that a union could obtain the information it requires and the guest could remain anonymous.
 
 
 30
 Although not necessary to dispose of this case, there are inconsistencies in Resorts' position that deserve cursory mention. First, Resorts contends that "high rollers" desire augmented privacy, but it never demonstrated that the complaining guests were high rollers or that they were even gambling. Further, Resorts offered to call the complaining guests to inquire whether they would be willing to divulge their identities, to obtain more information for the Union, or to set up a conference call involving the Union. This belies Resorts' concern that its guests generally dislike receiving telephone calls from a source related to gambling.
 
 
 31
 Also, Resorts expressed its intention to call the complaining guests as witnesses at the proposed arbitration, thus destroying the guests' anonymity. This stated intent "to call the guest as a witness in the arbitration proceeding [suggests] that tactics rather than privacy was the primary consideration." Fairmont Hotel, 304 NLRB at 748; See also Pennsylvania Power, 301 NLRB at 1107 n. 16 ("The [employer] cannot legitimately claim a need to keep [the informants'] identities secret if it plans to have them testify.").
 
 
 32
 The facts of the present case do not require us to decide if a confidentiality interest exists in a situation where the guest has requested or was offered confidentiality, but the employer nonetheless expresses the intention to call that guest as a witness at an arbitration hearing. Common sense dictates, however, that if the employer plans to divulge the identity of the witness at the hearing, the employer's claim of a confidentiality interest rings as disingenuous. Because the guests in this case, however, neither requested nor received an offer of anonymity, that issue is not before this court.
 
 
 33
 In sum, Resorts' attempt to distinguish this case from Fairmont Hotel is unpersuasive. The Board did not err in holding that Resorts failed to establish a legitimate confidentiality claim as to the requested witness identity information because the complaining guests neither requested, nor received an offer of, anonymity.
 
 B. Waiver
 
 34
 Alternatively, Resorts argues that even if the Union once possessed the right to receive such witness identity information, the Union has waived that right. This argument stems from a bargaining session prior to the incidents in question between the Union and Resorts in which the Union sought to include an express provision in their contract that would specifically acknowledge its right to witness identity information. Resorts rejected the express provision, and it thus never became part of the agreement between the parties. In essence, Resorts contends that the Union impliedly waived its right to the witness identity information when it "agreed" to exclude the express provision from the contract.
 
 
 35
 We believe that Resorts attaches much more significance to the excluded provision than is warranted. A waiver of statutory rights may not be found unless there is a "conscious relinquishment by the Union, clearly intended and expressed to give up the right." Proctor & Gamble Mfg. Co. v. NLRB, 603 F.2d 1310, 1318 (8th Cir.1979). Here, Resorts does not point to any language in the agreement or any other unmistakable expression of the Union waiving its right to the requested information. Silence in the collective bargaining agreement on this issue does not satisfy the test of a meeting of the minds with respect to it. General Motors Corp. v. NLRB, 700 F.2d 1083, 1091 (6th Cir.1983). A more reasonable conclusion from the brief bargaining record before us is that the Union did not bother to push for a contract provision that would redundantly guarantee it what the NLRA already provides.
 
 
 36
 We note further that serious doubts have been raised as to whether a bargaining representative can, consistent with its statutory role, effectively waive or relinquish a right to be furnished information where that information is necessary to protect the rights of employees in the terms and conditions of their employment. General Motors Corp., 257 NLRB 1068, 1071 (1981), enf' d, 700 F.2d 1083 (6th Cir.1983). Moreover, because "national labor policy disfavors waivers of statutory rights by unions," Chesapeake & Potomac Tel. Co. v. NLRB, 687 F.2d 633, 636 (2d Cir.1982), the employer bears the weighty burden of demonstrating that the waiver was clear and unmistakable. Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983); NLRB v. New York Tel. Co., 930 F.2d 1009, 1011 (2d Cir.1991) (and cases cited therein).
 
 
 37
 A clear and unmistakable waiver may be found in the express language of the collective bargaining agreement; or it may even be implied from the structure of the agreement and the parties' course of conduct. No waiver will be implied, however, unless it is clear that the parties were aware of their rights and made the conscious choice for whatever reason, to waive them. We will not thrust a waiver upon an unwitting party.
 
 
 38
 Id. at 1011; see also American Distrib. Co. v. NLRB, 715 F.2d 446, 450 (9th Cir.1983), cert. denied, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984) (waiver is effective only if the subject was "fully discussed or consciously explored" and the union "consciously yielded" its interest in the matter).
 
 
 39
 In this case, the Union did not include an express waiver of its right to the witness identity information in the collective bargaining agreement. Moreover, Resorts did not carry its weighty burden of demonstrating implied waiver because it did not conclusively show that the Union consciously relinquished its right to the information. The Union possesses a statutory right to the witness identity information. The existence of a plausible explanation other than waiver for the Union's actions at the bargaining table negates any claim that Resorts has demonstrated "clear and unmistakable" waiver. See Proctor & Gamble, 603 F.2d at 1318 ("The Company ... must show more than that the Union yielded its initial bargaining position during ... negotiations.... It must go further to show that the parties intended to limit the Union's statutory right to the information."); American Distrib., 715 F.2d at 450 ("The Union's abandonment and foregoing of the contractual provision is insufficient to constitute a waiver of its statutory right to bargain."). Hence, the Board did not err in determining that Resorts failed to prove that the Union clearly and unmistakably intended to waive its right to the witness identity information at issue in this case. See id.; accord NLRB v. United Technologies Corp., 884 F.2d 1569, 1575 (2d Cir.1989).
 
 III. CONCLUSION
 
 40
 In conclusion, we hold that an employer has a duty, absent a waiver, to furnish the Union upon request with relevant information pertaining to complaining witnesses, who have neither requested nor received a promise of anonymity and whose complaints become the basis for disciplinary proceedings against employees. Resorts failed to establish a legitimate confidentiality interest in the witness identity information because the complaining guests neither requested, nor received an offer of, anonymity. In such a scenario, a guest who voluntarily comes forward to lodge a complaint has no reasonable expectation that his or her name will be kept confidential.
 
 
 41
 Furthermore, the Union's failure to insist on inclusion of an express provision guaranteeing witness identity information in the collective bargaining agreement falls far short of sustaining Resorts' heavy burden of proving that the Union unmistakably waived its right to the witness identity information.
 
 
 42
 Accordingly, the Board did not err in finding that Resorts violated subsections 8(a)(5) and (1) of the NLRA by refusing to provide the Union with the requested witness identity information. Thus, the petition for review of Resorts International Hotel Casino will be denied and the Board's cross petition for enforcement will be granted and its order enforced.
 
 
 
 [1]
 The Board exercised subject matter jurisdiction over this case pursuant to § 10(a) of the NLRA. 29 U.S.C. § 160(a). This court exercises jurisdiction pursuant to subsections 10(e) and (f) of the Act. 29 U.S.C. § 160(e), (f)
 
 
 [2]
 An employer's withholding of relevant information based on such a legitimate confidentiality interest may still be challenged, whereupon the Board would be required to balance the employer's confidentiality interest against the union's need for the information. Pennsylvania Power, 301 NLRB at 1105